**DIEMATIC MANUFACTURING CORP., Plaintiff,**

v.

**PACKAGING INDUSTRIES, INC., Defendant.**

**No. 74 Civ. 1557–LFM.**

United States District Court, S. D. New York.

May 3, 1976.

Miller & Summit, New York City, for defendant; Ruth Balen, New York City, of counsel.

Wyatt, Gerber, Shoup & Reardon, New York City, for plaintiff; Eliot S. Gerber, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

We deal here with three motions. First, defendant Packaging Industries, Inc. (Packaging) moves, pursuant to Rule 12(c), Fed. R.Civ.P., for judgment on the pleadings dismissing certain allegations in Count I and all of Count III of the complaint as barred by res judicata. Second, plaintiff Diematic Manufacturing Corp. (Diematic) moves, pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment. Third, Packaging moves, pursuant to Rules 13(f) and 15, Fed. R.Civ.P., for leave to amend its answer to include omitted counterclaims. We shall discuss these motions seriatim.

The history of this suit is outlined in our earlier opinion, dated September 13, 1974, granting Diematic's motion to stay arbitration and denying Packaging's cross-motions to compel arbitration and to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim.[1] The Court of Appeals dismissed Packaging's appeal from our decision on May 23, 1975 as not appealable under either 28 U.S.C. § 1291 or § 1292(a)(1).[2]

Both Diematic, a New York corporation, and Packaging, a Massachusetts corpora-

---

1. *Diematic Mfg. Corp. v. Packaging Indus., Inc.,* 381 F.Supp. 1057 (S.D.N.Y.1974).

2. 516 F.2d 975 (2d Cir. 1975).

tion, manufacture trays and toolings for impulse sealing machinery used in connection with transparent blister packaging of small consumer items, such as razor blades. Both hold patents covering the process by which they produce trays. Packaging's patent is No. 3,170,275 (the '275 patent), issued on February 23, 1965. Diematic's patent is No. 3,617,696 (the '696 patent), issued in 1971.

This action was commenced by the filing of the complaint on April 5, 1974. Diematic, in Count I of the complaint, seeks essentially a declaratory judgment under 28 U.S.C. § 2201 of invalidity and non-infringement of Packaging's '275 patent.[3] Count III alleges that the '275 patent is invalid and unenforceable because it was obtained by fraud upon the United States Patent Office. This count also charges that Packaging has attempted to monopolize trade in heat impulse blister and card sealing machines and trays by virtue of its illegally obtained patent, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Diematic seeks treble damages on this count, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.[4]

Packaging asserts on its motion for judgment on the pleadings that paragraphs 13, 15(a) to (m), and 16 of Count I, and Count III in its entirety were previously litigated as counterclaims in a suit in this district entitled *Packaging Industries Limited, Inc. v. Diematic Manufacturing Corp.*, Docket No. 65 Civ. 2007 (the 1965 action). That suit was terminated on July 17, 1968 by the filing of a stipulation of dismissal which provided:

**3.** Jurisdiction over Count I is invoked under 28 U.S.C. § 1338(a).

**4.** Jurisdiction over Count III is invoked under 28 U.S.C. §§ 1337 and 1332(a)(1).

**5.** Diematic's contention that this assertion has already been decided by us in our earlier opinion, mentioned above, and thus is the law of the case is incorrect. The question of res judicata was neither briefed nor argued in the earlier application. The Court of Appeals noted, in its dismissal of Packaging's appeal, that "the

"The parties hereto stipulate that this case and the counterclaims are and shall be dismissed with prejudice as to all parties, as of this 15th day of July, 1968."

Packaging contends, therefore, that the allegations common to the present complaint and to the counterclaims raised in the 1965 action must be dismissed as barred by res judicata.[5]

■ Three elements must be present for a judgment in a prior suit to bar the maintenance of a subsequent action:

(1) the prior judgment must have been rendered by a court of competent jurisdiction;

(2) the judgment must have been a final judgment on the merits; and

(3) the same claims and the same parties were involved in both suits.[6]

There is no question that the first element is satisfied. Nor is it disputed that the same parties are involved. Diematic contends, however, that the other necessary elements—that the prior judgment was final on the merits and that the same claims are involved—are not present here. We shall deal first with Diematic's claim for declaratory relief.

■ The relevant criteria for determining whether claims raised in two suits are the same for the purpose of res judicata are

"whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as

appellant has raised for the first time the question of res judicata. Presumably, the defense will be raised in the answer . . . and the district court can determine that issue in the first instance." 516 F.2d at 980.

**6.** *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133 (2d Cir. 1975); *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, 905 (1948); 1B J. Moore, Federal Practice ¶ 0.410[1] at 1152–1153 (2d ed. 1974).

was required in the first, and whether the essential facts and issues in the second were present in the first [footnotes omitted]." [7]

Packaging attacks paragraphs 13, 15(a) to (m), and 16 of Count I in which Diematic alleges that the '275 patent is invalid, the reasons why, and that Packaging is estopped from contending that the claims of the '275 patent encompass Diematic's trays due to the "prior state of the art and the proceedings in the United States Patent Office."

The identical allegations were made by Diematic in the 1965 action.[8] Thus, if the stipulation of dismissal "with prejudice" operated as a final judgment on the merits, Diematic is barred from relitigating the question of the validity of the '275 patent.

 We start with the proposition that, as a general rule, consent decrees are accorded res judicata effect.[9] And a stipulation of dismissal "with prejudice" is entitled to similar deference.

In *Addressograph-Multigraph Corp. v. Cooper,* 156 F.2d 483 (2d Cir. 1946), the court held that res judicata is not to be accorded to a consent decree in a patent suit unless it adjudicates both validity and infringement of the patent.

"[I]n a decree, at least in one entered by consent, either an adjudication of infringement, or a grant of some relief from which infringement may be inferred, is essential before any effect of res judicata can be given to it on the issue of validity." [10]

The rationale for this is that "[t]o hold a patent valid if it is not infringed is to decide a hypothetical case." [11]

*Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), injected some confusion into this area. There, the Supreme Court eliminated the doctrine of licensee estoppel, holding that a licensee's agreement not to challenge the validity of the licensor's patent is void as against public policy. The question which then arose was whether *Lear* should be extended to deny any res judicata effect to consent decrees in infringement suits. The Second Circuit, however, has ruled that *Lear* should not be so extended but that consent decrees should be accorded res judicata effect under the guidelines of *Addressograph-Multigraph.*[12]

We look, therefore, to the stipulation of dismissal in the 1965 action to determine whether the requirements for res judicata are present.

The stipulation of dismissal is quite unlike the usual form of consent decree used to terminate infringement actions. There is no express recitation of either validity or infringement of the '275 patent.

Packaging urges that the stipulation of dismissal should be considered in conjunction with a licensing agreement, dated June 6, 1968, between Packaging and Diematic. This agreement does contain an express admission of the validity of the '275 patent. It also provides that Diematic shall pay $2,500 "as a paid up royalty and settlement in full," in return for a release by Packaging from its claims under the '275 patent.

7. *Herendeen v. Champion Int'l Corp., supra,* 525 F.2d at 133–134.

8. See paragraphs Third, Seventh and Fourteenth of the answer in the 1965 action.

9. *United States v. Southern Ute Tribe or Band of Indians,* 402 U.S. 159, 91 S.Ct. 1336, 28 L.Ed.2d 695 (1971); *Siegel v. National Periodical Publications, Inc.,* 508 F.2d 909, 913 (2d Cir. 1974); 1B J. Moore, Federal Practice ¶ 0.409[5] at 1032 (2d ed. 1974).

10. *Addressograph-Multigraph Corp. v. Cooper,* 156 F.2d 483, 485 (2d Cir. 1946).

11. *Altvater v. Freeman,* 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450, 1453 (1943).

12. *Wallace Clark & Co. v. Acheson Indus., Inc.,* 532 F.2d 846 (2d Cir. 1976); *Broadview Chem. Corp. v. Loctite Corp.,* 474 F.2d 1391 (2d Cir. 1973). See also *Schlegal Mfg. Co. v. USM Corp.,* 525 F.2d 775, 187 U.S.P.Q. 417 (6th Cir. 1975). But cf. *Kraly v. National Distillers & Chem. Corp.,* 502 F.2d 1366 (7th Cir. 1974); *USM Corp. v. Standard Pressed Steel Co.,* 184 U.S.P.Q. 476 (N.D.Ill.1974), vacated in part, 524 F.2d 1097, 188 U.S.P.Q. 52 (7th Cir. 1975).

The obvious inference from this provision is an admission by Diematic of past infringement. Thus, this agreement embodies the factors necessary for res judicata under *Addressograph-Multigraph.*

■ Consent decrees, however, are contracts between the parties, acknowledged in court, and recorded with the sanction of the court, and, as such, are not treated as mere contracts. The licensing agreement between Packaging and Diematic, on the other hand, which was not embodied nor even mentioned in the stipulation of dismissal, represents a wholly private agreement between the parties. It should not, therefore, be considered in determining this motion.

This is not to say that a simple stipulation of dismissal with prejudice cannot be accorded res judicata effect in an infringement suit. It, like a consent decree, is an agreement recorded and acknowledged in court, and it is, therefore, generally entitled to res judicata effect on all matters over which it extends, for it is considered an adverse judgment on the claims so dismissed. Thus, if there is a clear implication in the stipulation of dismissal that Diematic has admitted both the validity and the infringement of the '275 patent, res judicata should apply, and Diematic may not attack the validity of the '275 patent in the present action.

■ Diematic alleged both invalidity and non-infringement of the '275 patent in its first counterclaim in the 1965 action. If the stipulation of dismissal is considered an adverse judgment on both of these issues, the requirements of *Addressograph-Multigraph* are met. It must be recalled, however, that Packaging, as plaintiff in the 1965 action, alleged that Diematic had infringed the '275 patent. The termination of this infringement claim by the stipulation of dismissal must be taken, for our present purpose, as an adverse judgment on that issue as well. Thus, there is no clear implication in the stipulation that there was an adjudication of infringement of the '275 patent by Diematic. Since a patent may not be adjudicated to be valid unless there has been an infringement, we find that the

issue of the validity of the '275 patent is not foreclosed to Diematic by the termination of the 1965 action. We shall now consider Diematic's antitrust claim.

■ Diematic does not dispute that the stipulation of dismissal "with prejudice" in the 1965 action was a final adjudication on the merits of the antitrust claims asserted. Diematic contends, however, that there are material differences between the antitrust claims asserted in the second counterclaim in the 1965 action and those asserted as Count III here.

An inspection of the pleadings in both actions reveals that paragraphs 35, 36, 37, 38, 39, 40, 41, and 42 of the present complaint are practically verbatim reproductions of paragraphs 17, 20, 21, 22, 23, 24, 25, 26, and 27 of the amended answer in the 1965 action. These paragraphs allege that Packaging obtained the '275 patent through false and fraudulent statements to the United States Patent Office, which fact renders the '275 patent void and unenforceable, and that Packaging has attempted to monopolize the heat sealing and blister tray trade by virtue of the '275 patent, in violation of Section 2 of the Sherman Act and Section 4 of the Clayton Act.

The identity between these claims is clear, and, since the stipulation of dismissal with prejudice in the 1965 action acted as an adverse judgment on these claims, Diematic is estopped by res judicata from relitigating them here.

Diematic asserts that some issues raised in Count III do not relate to the alleged invalidity of the '275 patent and that those claims survive. We agree.

Count III, unlike the second counterclaim in the 1965 action, alleges that Packaging has misrepresented Diematic's rights to sell heat sealing trays, has disparaged the quality of Diematic's trays, and has harassed Diematic's customers. These assertions do not relate directly to the allegation that the '275 patent was obtained by fraud. A judgment for Diematic on these claims would in no way destroy Packaging's rights established in the 1965 action. Nor would the evidence be the same. And the essen-

tial issues present in the former action are not again involved here.

Diematic should not be foreclosed from asserting any antitrust claim if its underpinnings do not rest upon issues already adjudicated. Diematic, therefore, should be granted an opportunity to replead its antitrust claim, if it can, deleting the barred allegations.

■ Diematic moves for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., on Count I of the complaint and the first and second counterclaims of the answer.

Diematic bases this motion on a "Covenant Not to Sue" (the Covenant), signed by Packaging on July 6, 1968. The Covenant provides that Packaging will not sue Diematic under the '275 patent with regard to heat sealing trays and machines as described in the Covenant. It is Diematic's position that the Covenant grants it a royalty-free license to manufacture and sell trays and machines which are therein described. Packaging claims, on the other hand, that the Covenant is not a "royalty-free license" but rather an agreement by Packaging that it would not initiate litigation regarding trays and a machine presently covered by Diematic's '696 patent. Packaging asserts that the Covenant must be viewed in light of the entire settlement agreement of the 1965 action.

According to Packaging, the 1965 action was terminated when Diematic agreed to cease infringement of the '275 patent. Diematic had developed a new tray and machine (for which Diematic later received the '696 patent), and Packaging determined that this apparatus did not infringe its '275 patent. Packaging contends that the description in the Covenant was intended to cover Diematic's apparatus only. Thus, Packaging asserts that there is a triable issue of fact as to whether Diematic's or Packaging's interpretation of the Covenant is correct.

In *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975), the court held that where there are two reasonable interpretations of a contract, there is a triable issue of fact precluding summary judgment, since, on a motion for summary judgment, "the court cannot try issues of fact; it can only determine whether there are issues to be tried." [13]

An additional question of fact exists as to whether the trays Diematic now produces, and which are the subject of this suit, are covered by the description in the Covenant. The motion for summary judgment must, therefore, be denied.

Lastly, Packaging moves, pursuant to Rules 13(f) and 15, Fed.R.Civ.P., for leave to amend its answer to include omitted counterclaims for reformation of the Covenant on the grounds of mutual mistake and fraud.

Packaging asserts that, insofar as the Covenant may be interpreted to grant Diematic a royalty-free license to infringe the '275 patent, it does not reflect the true understanding of the parties. Packaging claims that, under the Covenant, Diematic is free to deal in trays and machines covered by the '696 patent, but that the description of these items is not accurate. Therefore, Packaging seeks to reform the description in conformity with the '696 patent.

Rule 13(f) provides:

"When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."

Packaging claims that it was not aware of Diematic's interpretation of the Covenant until the summary judgment motion was made. However, the ambiguity in the Covenant should have been apparent from the time it was executed. Thus, it does not appear that the omission was due to any "oversight, inadvertence, or excusable neglect." The clear intention, however, behind Rule 13(f) is to allow all associated claims to be litigated in a single lawsuit. Since it does not appear that Packaging is guilty of bad faith in its failure to plead the proposed counterclaims in its answer, and

---

**13.** *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975).

since Diematic has not shown that it would be unduly prejudiced by their inclusion, we find that justice requires that Packaging be permitted to amend.

■ Diematic resists the amendment on the ground that the proposed counterclaims are barred by the statute of limitations. It is, of course, well settled that the court may consider the statute of limitations on a motion to amend,[14] rather than require a subsequent motion to strike.[15]

New York Civil Practice Law and Rules (CPLR) § 213(6) (McKinney 1972) states the applicable statute of limitations for an action based upon mistake, that is, six years from the time the alleged mistake occurs.[16] In this case, the statute expired on July 8, 1974, six years from the execution of the Covenant.

The applicable statute of limitations for an action based upon fraud is the longer of (1) six years from the date of the alleged fraud (here, again, it expired on July 8, 1974), or (2) two years from the date that facts showing the fraud were actually discovered or could have been discovered with reasonable diligence.[17]

Packaging asserts that it is saved from the strict application of the six-year limitation by the doctrine of "relation back." We must, therefore, determine whether this doctrine applies at all and, if it does, whether the proposed counterclaims are preserved.

It is not clear whether this determination must be made on the basis of the federal rules or state law. The doctrine of "relation back" of amendments is so closely associated with the statute of limitations that it could be considered a matter of substantive law and, thus, governed by state law.[18]

CPLR § 203(e) provides:

"A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

Thus, under New York law, if the proposed counterclaims do not present issues of which Diematic did not have notice in the answer, they are deemed to relate back to July 9, 1975, when the answer was filed. That date, however, is still beyond the July 8, 1974 expiration of the statute of limitations. But CPLR § 203(c) provides in part that:

"A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed . . . ."

Under New York law, therefore, the proposed counterclaims would relate back to the date the complaint in this action was filed, April 5, 1974, so long as Diematic was apprised of the transaction by Packaging's answer.

Diematic argues that state law should not apply at all in this matter but only the federal rules.[19] Rule 13(f) contains no provision that an omitted counterclaim should relate back. Rule 15(c), however, provides in part:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

We have found no case in this circuit which considered whether Rule 15(c) applies

---

14. *Middle Atl. Utilities Co. v. S. M. W. Dev. Corp.,* 392 F.2d 380, 385 (2d Cir. 1968).

15. 3 J. Moore, Federal Practice ¶ 15.08[4] at 906 (2d ed. 1974).

16. See Practice Commentary C213:6 to CPLR § 213; 1 Weinstein-Korn-Miller, New York Civil Practice ¶ 213.18 (1975).

17. CPLR §§ 213(8), 203(f). It is unnecessary to determine a date of actual or constructive discovery of facts if the claim would not be barred by the six-year limitation.

18. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

19. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

to amendments under Rule 13(f). The Sixth Circuit, however, was faced with this problem in *Stoner v. Terranella,* 372 F.2d 89 (6th Cir. 1967), and held that Rule 15(c) applies only to amendments under Rule 15(a), stating that "amendments made pursuant to Rule 13(f) do not relate back to the original pleadings." [20]

The court in *Butler v. Poffinberger,* 49 F.R.D. 8 (N.D.W.Va.1970), came to the opposite conclusion, noting that:

"First, there is nothing in the language of Rule 15(c) to indicate that it applies only to amendments under Rule 15(a). Rule 15(c) speaks only of 'amendments.' If the Rule was meant to encompass less than all of the amendments authorized by the Federal Rules, one would expect some indication of that fact within the Rule. Secondly, the criteria established by Rule 15(c) can be satisfied by at least some Rule 13(f) amendments." [21]

We find the reasoning in *Butler* most persuasive on this issue, and we therefore hold, with all due respect to the Sixth Circuit, that amendments under Rule 13(f) relate back to the original pleading under Rule 15(c) so long as the adverse party had adequate notice of the transactions forming a basis for the amended claim.

In this case, the Covenant was originally mentioned by Diematic in paragraphs 21 and 31 of the complaint. Packaging, in paragraphs 4 and 16 of the answer, denied the allegations of paragraphs 21 and 31 of the complaint, admitting only that "the Settlement Agreement contained a 'covenant not to sue'." Thus, Diematic cannot complain that it was not apprised of the transaction forming the basis for the proposed counterclaims.

The amendment, therefore, will relate back to the date of Packaging's answer, July 9, 1975. Diematic contends that, even if the amendment does relate back to this date, the claims are still barred by the statute of limitations, since it expired on July 8, 1974. This is incorrect.

A non-federal counterclaim in an answer is not barred in federal court if it would not be barred in state court.[22] As we have already seen, in New York, counterclaims based upon the same transaction mentioned in the complaint may be asserted, notwithstanding the fact that the statute of limitations had run between the times that the complaint and the answer were served.

Accordingly:

(1) Packaging's motion for judgment on the pleadings is granted to the extent that Diematic may not raise in Count III the issue of whether the '275 patent was obtained by fraud. In all other respects, the motion is denied;

(2) Diematic's motion for partial summary judgment is denied; and

(3) Packaging's motion for leave to amend its answer to include omitted counterclaims is granted.

Diematic is directed to serve and file an amended complaint within fifteen (15) days, deleting the barred allegations and asserting as Count III its antitrust claim, if any. Within ten (10) days from the date that the amended complaint is filed, Packaging shall serve and file its amended answer, and within five (5) days from that time, Diematic shall serve and file its amended reply.

So ordered.

---

**20.** *Stoner v. Terranella,* 372 F.2d 89, 91 (6th Cir. 1967). The court also noted that the proposed amendment would not relate back if state law were applied.

**21.** *Butler v. Poffinberger,* 49 F.R.D. 8, 11 (N.D. W.Va.1970). The court noted that "the appli-cable West Virginia law is unclear." 49 F.R.D. at 10.

**22.** See 3 J. Moore, Federal Practice ¶ 13.11 at 13–246 (2d ed. 1974) and the cases cited therein.