Gregory P. NEELD, Plaintiff,

v.

NATIONAL HOCKEY LEAGUE, a non-profit unincorporated association, Atlanta Hockey, Inc., a Georgia Corporation, Storer Broadcasting, Inc., a Florida Corporation, Niagara Frontier Hockey Corporation, a New York Corporation, Chicago Black Hawks Hockey Team, Inc., an Illinois Corporation, Detroit Red Wings Hockey Club, Inc., a Michigan Corporation, California Sports, Inc., a California Corporation, Northstar Financial Corporation, a Minnesota Corporation, Club de Hockey Canadian, a Canadian Corporation, Nassau Sports Limited, a limited partnership, Madison Square Garden Center, Inc., a New York Corporation, Philadelphia Hockey Club, Inc., a Pennsylvania Corporation, Pittsburgh Penguins, Inc., a Pennsylvania Corporation, Missouri Arena Corporation, a Missouri Corporation, Harold E. Ballard, a sole proprietorship, Vancouver Hockey Club, Ltd., a Canadian Corporation, Washington Capitals Hockey Club, a limited partnership, H & L Partnership, a Colorado limited partnership, Defendants.

Civ. No. 77–32.

United States District Court, W. D. New York.

Sept. 19, 1977.

**448**

Daniel S. Mason, Furth, Fahrner & Wong, San Francisco, Cal., Robert J. Salomon, Fudeman & Renaldo, Buffalo, N. Y., for plaintiff.

Bingham B. Leverich, Covington & Burling, Washington, D. C., Brian F. Toohey, Cohen, Swados, Wright, Hanifin, Bradford & Brett, Buffalo, N. Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is the second action filed by plaintiff Gregory P. Neeld, an individual who has sight in only one eye, against the National Hockey League ("NHL") and its member franchises. Section 12.6 of the NHL By-Laws provides that:

> "A player with only one eye, or one of whose eyes has a vision of only three-sixtieths (3-60ths) or under, shall not be eligible to play for a Member Club."

In June of 1975 plaintiff had been selected by the Buffalo Sabres hockey team ("the Sabres", of which the member franchisee is defendant Niagara Frontier Hockey Corporation) in the fourth round of the so-called amateur players' draft, but was rendered ineligible to compete for a position on the team by Section 12.6.

Prior to filing the instant nine-count complaint January 21, 1977, plaintiff had commenced an action September 8, 1975 in the United States District Court for the Northern District of California ("the California action") against the same defendants[1] in which the Honorable Robert H. Schnacke of that court entered an order September 23, 1976 granting defendants' motion for summary judgment. The complaint in the California action alleged that the NHL and its member clubs conspired in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, to prevent plaintiff from competing for a position on the Sabres and on any other NHL team and from otherwise playing professional hockey in the NHL. Although such complaint did not specifically mention or refer to Section 12.6, the memoranda of law and affidavits submitted to the court in the California action and the transcript of the proceedings held before Judge Schnacke on defendants' motion for summary judgment clearly reveal that the matter there in dispute between the parties and the legal issue then decided by that court was the application *vel non* of such by-law to plaintiff and that the granting of summary judgment in favor of defendants was based solely upon a finding that such by-law was a reasonable restraint of trade and hence not violative of section 1 of the Sherman Act. The California action is presently on appeal to the Court of Appeals for the Ninth Circuit.

In the instant complaint, count I alleges that the amateur players' draft conducted by the NHL and its member teams violates section 1 of the Sherman Act by precluding plaintiff from seeking employment by and negotiating with any member club other than the Sabres. Count II reasserts the allegations of count I and alleges that the NHL's amateur players' draft also violates section 340 of the General Business Law of the State of New York, known as the Don-

---

1. The only defendant named in the instant complaint that was not a named defendant in the California action is the NHL member franchise located in Denver, Colorado which was not then a member of the NHL. In addition, the present action does not name as defendants the President and Board of Governors of the NHL as did the California action. Plaintiff does not contend that these differences affect the applicability of the *res judicata* doctrine and I agree that the issue of identity of parties should not be injected into this lawsuit.

nelly Act. Count III alleges that, after the filing of the California action, defendants continued to refuse plaintiff the opportunity to play professional hockey in the NHL, that defendants communicated with other professional hockey leagues and their member teams and franchises and attempted to influence them to refuse employment to plaintiff, and that defendants have discriminated against plaintiff's brothers in their efforts to obtain employment with NHL member teams, all in violation of the Sherman Act. It is alleged in count IV that the implementation of Section 12.6 by member clubs constitutes a violation of section 296 of the New York Human Rights Law. In counts V and VI, respectively, plaintiff alleges that defendants' adherence to Section 12.6 is violative of 42 U.S.C. §§ 1983 and 1985(3). Count VII alleges that such by-law conflicts with provisions of the collective bargaining agreement between the NHL and the NHL Players' Association and that enforcement of the by-law violates section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. The complaint's count VIII asserts that defendants' prevention of plaintiff's employment in the NHL by application of Section 12.6 to him constitutes the common law tort of interference with prospective economic advantage. Plaintiff further alleges in count IX that defendants have defamed his professional reputation by publishing and declaring false and inaccurate statements regarding his ability as a hockey player.

The matter is now before me on defendants' motion pursuant to Fed.R.Civ.P. rule 12(b)(1) and (6) to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment.[2] Defendants strenuously urge that the judgment entered in the California action is *res judicata* as to all nine counts of the instant complaint. They

contend that the California action was based upon the same cause of action as is here asserted in that the complaint therein sought redress for the same alleged wrongdoing by defendants and involved the same alleged injury to plaintiff—to wit, unlawful interference with and preclusion of his employment in the NHL. Defendants assert that the present action is barred by long-established principles of *res judicata* which prohibit a plaintiff from splitting a cause of action and litigating in separate forums what could and should have been litigated in one action. On the other hand, plaintiff contends that defendants' continued use of the amateur draft system and continued adherence to Section 12.6 renders inapplicable the doctrine of *res judicata*. He asserts that the instant complaint does not merely allege new grounds for the same relief or involve new legal theories of liability for the same cause of action, but sets forth new causes of action which could not have been raised at the time of the California action and consequently were not litigated and ruled upon in or otherwise foreclosed by that action.

As a general proposition, when a second suit is commenced between the same parties or their privies and bottomed on the same cause of action, a prior final judgment rendered on the merits by a court of competent jurisdiction constitutes an absolute bar to said second action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Herendeen v. Champion Intern. Corp.*, 525 F.2d 130, 133 (2d Cir. 1975); *United States v. General Electric Company*, 358 F.Supp. 731, 738 (S.D.N.Y.1973). The judicially-created doctrine of *res judicata*, however, does not operate as a bar to a second action between the same parties or their privies where said second action is brought on a cause of action different than that on which final judgment was rendered in the prior suit.[3] *Lawlor v. National Screen Service*,

---

**2.** Defendant NHL's motion to dismiss pursuant to Fed.R.Civ.P. rule 12(b)(5) for insufficiency of service of process was withdrawn.

**3.** In a case where the second suit is brought on a different cause of action, the doctrine of col-

lateral estoppel would preclude relitigation of issues actually litigated and determined by final judgment in the prior action. *Lawlor v. Na-*

349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Herendeen v. Champion Intern. Corp., supra,* at 133. The doctrine of *res judicata* provides that, when final judgment has been entered on the merits of a cause of action, it is conclusive and final between the parties or their privies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac, supra,* at 352; *see, also, Irving Nat. Bank v. Law,* 10 F.2d 721, 724 (2d Cir. 1926), in which the Honorable Learned Hand stated that the bar extends "not only to all matters pleaded, but to all that might have been * * * *". The United States Court of Appeals for the Second Circuit, citing *Heiser v. Woodruff,* 327 U.S. 726, 735, 66 S.Ct. 853, 90 L.Ed. 970 (1946), has recently observed in a *per curiam* opinion, *In re Interstate Stores, Inc.,* 558 F.2d 1046, 1047 (2d Cir. 1977), that a final judgment is *res judicata* "not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." It must be remembered, however, that these broad statements as to the extent of *res judicata* should not be interpreted to bar a subsequent action between the same parties on a different cause of action. Only with respect to the same cause of action does *res judicata* bar those grounds or issues which might have been, but were not, raised and litigated in the former action. *Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir. 1968); *McNellis v. First Federal Sav. & L. Ass'n of Rochester, N. Y.,* 364 F.2d 251, 254 (2d Cir.), *cert. denied,* 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966). The former judgment, when final and on the merits, puts to rest the whole cause of action which was the subject matter of the first action, including all matters which could have

been, but were not, raised, but does not estop a plaintiff from suing the same defendants on a distinct and separate cause of action. *Herendeen v. Champion Intern. Corp., supra,* at 133. Of course, in such a suit the doctrine of collateral estoppel would preclude re-contesting of issues actually litigated in the prior action.

*Res judicata* is a salutary doctrine based upon "considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations". *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). With respect to the same cause of action, judicial economy demands that a plaintiff litigate the entire controversy at one time in a single forum. *Schmieder v. Hall,* 545 F.2d 768, 771 (2d Cir. 1976). Although the policy behind the doctrine of *res judicata* is meant to foster judicial efficiency and to protect society and defendants from the expense and inconvenience of repetitious litigation, a court must be watchful not to apply the doctrine of *res judicata* in an inflexible and mechanical fashion so as to deny justice to a litigant. *La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.,* 495 F.2d 1265, 1276 (2d Cir. 1974); *Smith v. Pittsburgh Gage and Supply Company,* 464 F.2d 870, 874 (3d Cir. 1972). The policies of efficient judicial administration and of repose embodied in the doctrine of *res judicata* must not be permitted to preclude or foreclose a party from having an actual opportunity to be heard. *Menendez v. Saks and Company,* 485 F.2d 1355 (2d Cir. 1973), *rev'd on other grounds sub nom. Alfred Dunhill of London, Inc. v. Cuba,* 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976).

In the case at hand with the parties being the same as in the California action and there being no dispute as to the finality of the prior judgment in that action,[4] the

*tional Screen Service, supra,* 349 U.S. at 326, 75 S.Ct. 865; *Tait v. Western Maryland Ry. Co.,* 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405 (1933).

**4.** The pendency of an appeal does not suspend the *res judicata* effect of an otherwise final

judgment unless such appeal removes the entire action to the appellate court so as to constitute a proceeding *de novo,* which exception is not here pertinent. *Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 188–89, 61 S.Ct. 513, 85 L.Ed. 725 (1941); *United States v. Nysco Laboratories, Inc.,* 215 F.Supp.

question for resolution must necessarily focus on whether plaintiff is now suing upon the same cause of action as that upon which the prior judgment was rendered. If that inquiry is answered affirmatively as to any count in the instant complaint, then any such count is barred by the doctrine of *res judicata*. *See, Lawlor v. National Screen Service, supra,* 349 U.S. at 326, 75 S.Ct. 865; *Mitchell v. National Broadcasting Co.,* 553 F.2d 265 (2d Cir. 1977).

The term "cause of action" has come to mean different things depending upon the legal context in which it is used. *Hurn v. Oursler,* 289 U.S. 238, 247, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.,* 421 F.2d 1313, 1318 (5th Cir. 1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1972); *Williamson v. Columbia Gas & Electric Corp.,* 186 F.2d 464, 469 (3d Cir. 1950); *F. L. Mendez & Co. v. General Motors Corporation,* 161 F.2d 695, 696 (7th Cir. 1947). A precise definition of the legal concept of a "cause of action" for *res judicata* purposes has eluded the judiciary since the beginning of our jurisprudential system and I will not attempt to overcome this definitional deficiency.[5] Various tests have been employed, however, to determine what constitutes a cause of action for purposes of *res judicata*. In this circuit, the relevant criteria are "whether a different judgment in the second action would impair or destroy rights or interests established by the judgment rendered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first." *Herendeen v. Champion Intern. Corp., supra,* at 133–34 (footnotes omitted). *See, also, McNellis v. First Fed. Sav. & L. Ass'n of Rochester, N. Y., supra; Moreno v. Marbil Productions, Inc.,* 296 F.2d 543, 545

87, 89 (E.D.N.Y.), *aff'd,* 318 F.2d 817 (2d Cir. 1963).

**5.** In *Baltimore S. S. Co. v. Phillips,* 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927) the court stated:

"A cause of action does not consist of facts, but of the unlawful violation of a right which

(2d Cir. 1961); *Diematic Mfg. Corp. v. Packaging Industries, Inc.,* 412 F.Supp. 1367, 1369–70 (S.D.N.Y.1976).

At the outset, a determination should be made on plaintiff's contention that the continuation, subsequent to the judgment in the California action, of the wrongful conduct alleged in all nine counts of the instant complaint gives rise to new causes of action precluding application of the doctrine of *res judicata* to the entire complaint. In support of this continuing violation theory, plaintiff places heavy reliance on *Lawlor v. National Screen Service, supra; Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); and *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp., supra.* However, such cases are inapposite and readily distinguishable from the one at hand. In *Lawlor,* the Supreme Court held that a suit brought in 1949 was not barred by *res judicata* because it alleged new and different causes of action from those asserted in a 1942 action. The earlier lawsuit had been dismissed with prejudice and without any findings of fact pursuant to a settlement agreement entered into by the parties prior to trial. The court concluded that the 1949 action was not bottomed on the same antitrust cause of action because all of the conduct therein complained of had occurred after the consent judgment had been filed in the 1942 action, new antitrust violations not present in the former action were alleged, the claims subsequently sued on could not have been the basis of the previous suit as they did not then exist, and in the interim there had been a substantial expansion of the scope of the alleged monopoly. The instant complaint does not allege that defendants' conduct occurred solely after the entry of judgment in the California action but merely alleges that defendants have continued

the facts show. The number and variety of facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong."

to deprive plaintiff of employment opportunities in the NHL subsequent to the commencement of the California action. Furthermore, there are no allegations which can be construed to assert new antitrust violations which did not exist at the time of judgment in the California action and no allegations are made that in the interim period there has been any substantial change in the scope or extent of defendants' adherence to Section 12.6. *See, Engelhardt v. Bell & Howell Co.*, 327 F.2d 30, 36 (8th Cir. 1964).[6]

■ Plaintiff's reliance on *Zenith* to support his continuing cause of action theory for purposes of defeating *res judicata* is also misplaced. *Zenith* did not involve at all the doctrine of *res judicata*, but only dealt with continuing or successive causes of action in a statute of limitations context. It is settled that what constitutes a cause of action for purposes of applying a statute of limitations is decidedly different from what comprises a cause of action for determining whether a prior judgment bars a subsequent action. *Exhibitors Poster Exch. Inc. v. National Screen Serv. Corp., supra,* at 1318; *Williamson v. Columbia Gas & Electric Corp., supra,* at 469. *Zenith's* holding

that a plaintiff in an antitrust action could recover damages sustained within the period of limitations but caused by a defendant's conduct occurring prior to that period if, at the time of that conduct, those damages were speculative, uncertain or otherwise incapable of proof, is not pertinent to determining what is a cause of action for *res judicata* purposes. *See, Poster Exchange, Inc. v. National Screen Serv. Corp.,* 517 F.2d 117, 124–5 (5th Cir. 1975).

■ The court's holding in *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp., supra,* also does not pertain to those antitrust violations alleged in the present complaint bottomed on Section 12.6 and the NHL's amateur draft system. Therein, the court held merely that principles of *res judicata* did not bar a subsequent complaint alleging new and different conduct violative of the antitrust laws and occurring subsequent to judgment in a prior action. In the case at hand, plaintiff merely alleges that defendants have continued to adhere to Section 12.6 and have continued to utilize the amateur draft system for selecting new players, which adherence and utilization by defendants existed at the time of the California action. There are no allegations that

---

**6.** Although defendants also seek to distinguish *Lawlor* on the basis that therein there was no adjudication and consequently no findings of fact in the 1942 action, I find such contention unpersuasive. The Court in *Lawlor*, 349 U.S. at 327, 75 S.Ct. at 868, pointed out that:

"It is of course true that the 1943 judgment dismissing the previous suit 'with prejudice' bars a later suit on the same cause of action. It is likewise true that the judgment was unaccompanied by findings and hence did not bind the parties on any issue—such as the legality of the exclusive license agreements or their effect on petitioners' business—which might arise in connection with another cause of action. To this extent we are in accord with the decision below. We believe, however, that the court erred in concluding that the 1942 and 1949 suits were based on the same cause of action."

Thus, the fact that there was no adjudication and no findings of fact was not a basis upon which the court found that *res judicata* did not apply to the 1949 action. The significance of the lack of adjudicated facts, as the court in *Lawlor* emphasized, was that there could be no collateral estoppel effect with respect to any

lawsuit between the parties on a different cause of action. That the lack of findings of fact did not pertain to the issue of *res judicata* is shown by the court's statement that the 1943 consent judgment dismissing the first action with prejudice would bar a later suit on the same cause of action. Therefore, I must with all due respect disagree with the jurist's offhand statement in *Vogelstein v. National Screen Service Corporation*, 204 F.Supp. 591, 596 (E.D.Pa.1962), *aff'd per curiam*, 310 F.2d 738 (3d Cir. 1962), *cert. denied*, 374 U.S. 840, 83 S.Ct. 1894, 10 L.Ed.2d 1061 (1963), *reh. denied*, 375 U.S. 873, 84 S.Ct. 34, 11 L.Ed.2d 103 (1963), cited to me by defendants that: "Res judicata was also inapplicable [in *Lawlor*] since the judgment was unaccompanied by findings and the parties were not bound on any issue."

My reading and interpretation of *Lawlor* set forth above leads me to conclude that the dismissal with prejudice of the 1942 action without findings of fact did not prevent the doctrine of *res judicata* from barring the subsequent 1949 action because the court made clear that the judgment filed in the 1942 action would bar a subsequent suit on the same cause of action.

such conduct by defendants is not the same as had occurred prior to judgment in the California action. Thus, I conclude that plaintiff's continuing violation theory has no place in determining whether any counts of the instant complaint are barred by *res judicata*.

■ Applying the appropriate tests to counts I and II of the instant complaint, which allege that the NHL's amateur players' draft unlawfully precluded plaintiff from negotiating for employment with any team in the NHL except the Sabres and was an unreasonable restraint of trade under federal and New York State antitrust laws, I find that such counts allege a different cause of action from that adjudicated in the California action and thus are not barred by the doctrine of *res judicata*.

■ A judgment on the claim that the NHL's amateur players' draft was an unreasonable restraint of trade would not impair or destroy rights or interests established by the judgment rendered in the California action. The validity of Section 12.6 would not be drawn in issue and the right of the NHL to have such a by-law and prevent plaintiff's employment in the NHL on that basis would not be questioned or derogated. There would be no intrusion upon the NHL's adjudicated right to retain and implement Section 12.6 rendering those potential players who have only one eye ineligible to compete in the NHL. The evidence necessary to maintain the cause of action now asserted in counts I and II would be markedly different than that produced to sustain the judgment in the California action. In that action, the evidence focused on the risk of eyesight loss to plaintiff and possible precautionary measures which could be taken by him, the risk of injury to other NHL hockey players because of plaintiff's decreased peripheral vision and depth perception, the problems of obtaining insurance coverage by the NHL and its concomitant exposure to liability for injuries incurred relating to plaintiff's playing in the NHL, and the anticompetitive or salutary purpose and motivation behind the by-law rendering one-eyed players ineligible

to play in the NHL. To maintain the present claim set forth in counts I and II, the evidence would relate to the operation of the amateur players' draft, the need for such to maintain the economic viability of the NHL and its member clubs, the anticompetitive effects the draft has on potential players seeking to play professional hockey in the NHL by preventing their negotiating for employment with any team other than the one which drafted the player and the possible economic detriments flowing to the player from such restrictions such as lower salaries resulting from teams not bidding competitively for a player's services. Furthermore, the essential facts and issues presented to the court for adjudication in the California action are not present in the claim now alleged in counts I and II. Although plaintiff's complaint in the California action was admittedly broad-based and set forth general allegations that defendants prevented plaintiff from competing in the NHL in violation of the federal antitrust laws, it is undisputed that the facts and issues therein adjudicated related exclusively to the propriety of Section 12.6 of the NHL By-Laws. Simply, there is an insufficient measure of identity between the complaint filed in the California action and counts I and II of the instant complaint to hold that they assert the same cause of action. Defendants' attempt to define the harm alleged in both the California action and in counts I and II in an identical fashion—the interference with and preclusion of plaintiff's employment in the NHL—fails. While it is true that the harm for which plaintiff sought redress in the California action was the preclusion of his employment with any member team by virtue of Section 12.6 and he was therein asserting his right to play in the NHL despite his total loss of vision in one eye, the right now asserted in counts I and II is a potential player's freedom to negotiate for employment and to contract with a member team other than the one which drafted such player and which has the exclusive right pursuant to the NHL's amateur draft system to negotiate and employ the amateur draftee. In addition, counts I and II allege that

plaintiff has been injured by wrongdoings of defendants other than those involved in the California adjudication. In such action the alleged wrongdoings involved defendants' implementation and adherence to Section 12.6. The instant complaint's counts I and II allege other wrongful conduct—*i. e.*, the exclusive and restrictive practices of the amateur draft system. Both the right for which redress is sought and the alleged legal wrongs committed by defendants must be the same for the causes of action to be considered identical for purposes of *res judicata*. *Baltimore S.S. Co. v. Phillips, supra*, 274 U.S. at 321, 47 S.Ct. 600; *Herendeen v. Champion Intern. Corp., supra*, at 134; *Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.*, 295 F.2d 362, 364 (5th Cir. 1961). Such is not the case here with respect to counts I and II. I find that plaintiff in counts I and II of the instant complaint is asserting rights and alleging wrongful conduct by defendants which are sufficiently separate and distinct from those alleged in the California action to make the bar of *res judicata* inapplicable thereto.

■ Although counts I and II are not barred by *res judicata* principles, defendants have alternatively contended that plaintiff, who has been rendered ineligible to play hockey in the NHL because of Section 12.6, lacks standing to challenge the lawfulness of the NHL's amateur players' draft under federal and state antitrust laws. Section 4 of the Clayton Act, 15 U.S.C. § 15, gives plaintiff his private right of action under the federal antitrust laws and provides that:

"Any person who shall be injured in his business or property *by reason of* anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (Emphasis added.)

A party's right to bring a private right of action under the federal antitrust laws is expressly restricted by this statutory provision to those suits based on injuries which occur "by reason of" the alleged antitrust violation. *GAF Corporation v. Circle Floor Co., Inc.*, 463 F.2d 752, 757–59 (2d Cir. 1972), *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973); *Salerno v. American League of Prof. Baseball Clubs*, 429 F.2d 1003, 1004 (2d Cir. 1970), *cert. denied*, 400 U.S. 1001, 91 S.Ct. 462, 27 L.Ed.2d 452 (1971). Only a plaintiff who has been directly rather than incidentally injured by the alleged wrongdoings has standing to contest such antitrust violations. *Calderone Enter. Corp. v. United Artists Theatre Circuit*, 454 F.2d 1292, 1296 (2d Cir. 1971), *cert. denied*, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); *Billy Baxter, Inc. v. Coca-Cola Company*, 431 F.2d 183, 187 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826, *reh. denied*, 401 U.S. 1014, 91 S.Ct. 1250, 28 L.Ed.2d 553 (1971).

"There must be a causal connection between an antitrust violation and an injury sufficient for the trier of fact to establish that the violation was a 'material cause' of or a 'substantial factor' in the occurrence of damage." *Billy Baxter, Inc. v. Coca-Cola Company, supra*, at 187. *See, also, Bowen v. New York News, Inc.*, 522 F.2d 1242, 1255 (2d Cir. 1975).

Section 340(5) of the General Business Law of the State of New York tracks the language of section 4 of the Clayton Act and in pertinent part provides:

" * * * any person who shall sustain damages *by reason of* any violation of this section, shall recover three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, and reasonable attorneys' fees. * * *." (My emphasis.)

This provision was an adoption by the State of New York of the federal restriction on private antitrust actions contained in the Clayton Act which grants standing to sue only to those individuals who have suffered injuries directly attributable to the alleged

antitrust violations. *Lerner Stores Corp. v. Parklane Hosiery Co.*, 86 Misc.2d 215, 381 N.Y.S.2d 968, 969 (Monr.Co.S.Ct.), *aff'd on other grounds*, 54 A.D.2d 1072, 388 N.Y.S.2d 760 (4th Dep't 1976). Therein, the court noted that the Clayton Act's borrowed terminology embodied in section 340(5) of the General Business Law of New York "came with a history of interpretation" by the federal courts and construed New York's statutory provisions as incorporating the same constraints imposed by the federal courts upon a private individual's standing to sue under section 4 of the Clayton Act. Because of this identity of terminology and interpretative judicial gloss as to the standards for determining standing to sue under both the Clayton Act and New York's Donnelly Act, the issue of whether plaintiff has standing to challenge the validity of the NHL's amateur player draft under either the Clayton Act (count I) or the Donnelly Act (count II) may be simultaneously analyzed.

Although plaintiff claims that the amateur draft system precluded him from negotiating for employment in the NHL with any member franchise other than the Sabres who selected him as a fourth round draft choice, plaintiff could not have suffered any injury directly attributable to the operation and functioning of the amateur players' draft. Plaintiff was rendered ineligible to play with *any* team associated with the NHL because of Section 12.6. Plaintiff therefore cannot establish that the draft system could have been a material and substantial cause of any harm to him. The mere fact that the amateur draft system prevented plaintiff from negotiating with NHL teams other than the Sabres could not have resulted in any damage to plaintiff because Section 12.6 was and remains in full force and effect and is binding on all NHL member franchises. In *Molinas v. National Basketball Association*, 190 F.Supp. 241 (S.D.N.Y.1961), a professional basketball player, who had been indefinitely suspended for gambling in violation of a clause in his contract and of a league rule which prohibited gambling, instituted a suit against the league and its member teams alleging that the operation of the so-called reserve clause (pursuant to which players were allocated among member teams and under which a team holding a player's contract was given an option for renewal each year) was an unreasonable restraint of trade in violation of section 1 of the Sherman Act. The court held that plaintiff had failed to establish a clear and causal connection between the antitrust violation alleged and the injuries allegedly suffered by him. In holding that plaintiff lacked standing to challenge the validity of the reserve clause the court reasoned that the refusal of the league and its member teams to deal with plaintiff was the result of his indefinite suspension rather than the operation of the reserve clause because such member franchises, bound by the suspension given to plaintiff by the league president, would necessarily have refused to deal with plaintiff even if the reserve clause did not exist. Similarly, in the case at hand, plaintiff has not suffered any injury by reason of the operation of the NHL's amateur draft because all of the NHL's member clubs have been and still are unable to provide professional employment to plaintiff because they are constrained to follow and abide by Section 12.6. Plaintiff's inability to play professional hockey in the NHL and any resultant injury or damage suffered by plaintiff stems from defendants' adherence to such by-law. This absolute ban restricting plaintiff from playing on each and every member club precludes the possibility that plaintiff may have suffered any injury by reason of the NHL's amateur draft system.

*Smith v. Pro-Football*, 420 F.Supp. 738 (D.D.C.1976), does not support plaintiff's contentions that he has standing here to challenge the NHL amateur players' draft. In *Smith* the plaintiff was drafted by the Washington Redskins, signed a one year standard player contract and played a full season with them. Unfortunately, during the final game of the season plaintiff received a serious neck injury which terminated his career. Plaintiff asserted that his ability to market his football skills was damaged by the National Football League's

player selection draft. Plaintiff alleged that he was unable to negotiate a contract reflecting the true market value of his services and containing adequate safeguards against possible loss of earnings in the event of injury. Without the player selection draft, plaintiff could have negotiated for a higher salary for the season he played or could have negotiated a long-term contract which guaranteed payment for the full term of the contract even if he were injured. Therefore, the plaintiff in *Smith* was injured by reason of the player selection draft even though he later could not continue to play professional football because of the injuries he sustained. However, in the present case, plaintiff's inability to negotiate for employment with teams other than the Sabres could not have resulted in any injury to him because he could not play, and has not played, for any NHL team. Plaintiff cannot allege that he lost any increased salary or other benefits, as was possible and ultimately found in *Smith*.

■ Plaintiff contends that because Fed. R.Civ.P. rule 8(e)(2) permits alternative and inconsistent pleadings he has standing to challenge the NHL's amateur draft system despite the fact that he has been rendered ineligible to play for any NHL member club.[7] Rule 8(e)(2) in pertinent part provides:

> "A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. * * * A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal, equitable, or maritime grounds. * * * "

While it is true that plaintiff may plead inconsistently, the undisputed fact remains that Section 12.6 precluded plaintiff from

playing on any NHL member franchise. Although the NHL's amateur draft system prevented plaintiff from negotiating for employment with any team other than the Sabres, he could not possibly have been injured by such restriction because, even if he could have negotiated with other teams, he was rendered ineligible to play for them by the by-law. Because plaintiff cannot allege that he has been injured "by reason of" the NHL's amateur player draft, he has no standing to challenge its legality and his argument that he may plead inconsistent allegations is unavailing. Therefore, counts I and II of plaintiff's complaint are hereby dismissed.

■ Count III charges three separate violations of section 1 of the Sherman Act. Paragraph 31 alleges that defendants have retaliated against plaintiff for instituting the California action "by boycotting, and continuing to boycott plaintiff, and refusing to permit plaintiff the opportunity to play professional hockey with any defendant." Although couched in terms of retaliation, paragraph 31 merely alleges the same cause of action as was adjudicated in the California action—namely, that plaintiff is precluded from playing hockey in the NHL by the by-law. There are no allegations which can be construed to assert new and additional antitrust violations other than defendants' adherence to Section 12.6.[8] Defendants' continued refusal to permit plaintiff the opportunity to play for a member team because of their steadfast adherence to the by-law after plaintiff had commenced the California action does not give rise to a new cause of action. Plaintiff cannot create new causes of action for purposes of *res judicata* simply by alleging that defendants have continued the same course of conduct as existed prior to judgment on the merits in the California action. *Vogelstein v. National Service Corp., supra,* at

---

7. Plaintiff also points out that, on a motion to dismiss for failure to state a claim upon which relief can be granted, allegations in the complaint must be accepted as true and that the counts of a complaint cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

8. Even if upon a liberal reading such paragraph could be construed to allege antitrust violations based upon the amateur players' draft, plaintiff lacks standing to challenge such draft system.

595. Defendants' by-law was adjudicated to be lawful in the California action and thus they have a legal right to retain it. *See, Exhibitors Poster Exch., Inc. v. National Screen S.C.,* 517 F.2d 110, 114 (5th Cir. 1974). Paragraph 31 of count III is hereby dismissed.

■ Paragraph 32 of count III alleges that defendants have maliciously contacted and communicated with other professional hockey leagues in order to influence such leagues to refuse employment to plaintiff. These allegations obviously set forth a cause of action different than that asserted previously in the California action. Paragraph 32 seeks to redress a different right—to wit, the right to play in hockey leagues other than the NHL free from unwarranted and unreasonable restraints—and alleges a different legal wrong—*i. e.,* defendants' attempts to prevent other leagues from employing plaintiff. *See, Baltimore S.S. Co. v. Phillips, supra,* 274 U.S. at 321, 47 S.Ct. 600. Furthermore, a judgment favorable to plaintiff on the allegations set forth in paragraph 32 would not impair or destroy any rights or interests established in favor of defendants in the California action. *Herendeen v. Champion Intern. Corp., supra,* at 133–34.

Defendants alternatively contend that paragraph 32 fails to state a claim under section 1 of the Sherman Act because the alleged restraint could not possibly have an adverse or detrimental effect on competition in some market. Such contention fails to convince. Restrictions on the freedom of an individual to enter into employment relationships may, depending upon the circumstances, impair full and fair competition in the supply of a service or commodity to the public. *Nichols v. Spencer International Press, Inc.,* 371 F.2d 332, 336 (7th Cir. 1967); *Union Circulation Company v. Federal Trade Commission,* 241 F.2d 652 (2d Cir. 1957). It is true, as defendants point out, that the purpose of the antitrust laws is to protect competition and not individual competitors. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). But, in ruling on a motion to dismiss, the allegations of a complaint must be accepted as true and construed favorably to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Heit v. Weitzen,* 402 F.2d 909 (2d Cir. 1968). Whether the allegations of paragraph 32, if proven, relate to a tendency to suppress competition or otherwise to have any anticompetitive effects must await the gathering of relevant information through the discovery process or the development of factual issues by trial on the merits. It cannot now be said that, based upon the allegations of paragraph 32, plaintiff could prove no set of facts establishing an unreasonable restraint of trade in violation of section 1 of the Sherman Act. *Scheuer v. Rhodes, supra,* 416 U.S. at 236, 94 S.Ct. 1683; *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. 99. Therefore, defendants' motion to dismiss paragraph 32 of count III of plaintiff's complaint is hereby denied.

■ Paragraph 33 of count III alleges that defendants have arbitrarily and capriciously discriminated against plaintiff's brothers in their efforts to obtain employment with NHL teams. Defendants conceded at oral argument that paragraph 33 of count III alleges a cause of action different from that asserted in the California action and thus is not barred by *res judicata* but contend plaintiff has no standing to assert the claims of his brothers. A private plaintiff has standing to sue under the antitrust laws only upon a showing of direct personal injury to him. *United States v. Borden Co.,* 347 U.S. 514, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954). Paragraph 33 does not allege that plaintiff has suffered any personal injury, but merely alleges that his brothers have been harmed by reason of alleged violations of the antitrust laws. Thus, plaintiff lacks standing to assert paragraph 33 of count III and such paragraph is hereby dismissed.

■ Counts IV through VII of plaintiff's complaint allege, under various legal theories of recovery, that Section 12.6 of the NHL By-Laws is illegal. As previously noted, plaintiff in the California action al-

leged that such by-law violated section 1 of the Sherman Act. In the instant complaint (counts IV through VIII), plaintiff asserts that the same by-law, which was in dispute and adjudicated to be lawful in the California action, is violative of section 296 of the New York Human Rights Law, sections 1983 and 1985(3) of Title 42 of the United States Code, section 301 of the Labor-Management Relations Act (29 U.S.C. § 185), conflicts with certain provisions of the collective bargaining agreement between the NHL and the NHL Players' Association, and that its application to him constitutes the common law tort of interference with prospective economic advantage. The final judgment in the California action bars further litigation with respect to the validity of section 12.6 not only as to every matter offered and received, but also as to every ground of recovery which could have been presented to sustain such claim. Plaintiff's reliance now on different legal theories of recovery in his attempt to invalidate the by-law does not render the instant claims set forth in counts IV through VIII different causes of action from that asserted in the California action for *res judicata* purposes. *Woods Exploration & Pro. Co. v. Aluminum Co. of Amer.*, 438 F.2d 1286, 1313–15 (5th Cir. 1971); *Engelhardt v. Bell & Howell Co., supra; Moreno v. Marbil Productions, Inc., supra; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., supra; F. L. Mendez & Co. v. General Motors Corporation, supra,* at 697–98; *Williamson v. Columbia Gas & Electric Corp., supra,* at 468; *Mathews v. New York Racing Association, Inc.,* 193 F.Supp. 293 (S.D. N.Y.1961). In a second action against the same defendants based on the same alleged wrongful conduct and seeking the same recovery as litigated in a prior action, a plaintiff cannot merely advance different reasons or grounds for recovery and escape the bar of *res judicata.*[9] *Baltimore S.S. Co. v. Phillips, supra,* 274 U.S. at 320, 47 S.Ct. 600;

*Schmeider v. Hall, supra,* at 771; *Miller v. National City Bank of New York,* 166 F.2d 723 (2d Cir. 1948). "To indulge this lavish desire would be an acquiescence in the abuse of judicial process." *Schmeider v. Hall, supra,* at 771. A plaintiff must litigate his entire cause of action (in this case his claim that Section 12.6 is invalid) at one time and cannot splinter his claim and litigate it separately in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim when he had a reasonable opportunity to raise and litigate the same grounds in the former action. *United States v. California & Ore. Land Co.,* 192 U.S. 355, 358, 24 S.Ct. 266, 48 L.Ed. 476 (1904); *Stark v. Starr,* 94 U.S. 477, 485, 24 L.Ed. 276 (1877). "There would be no end to litigation if such a practice were permissible." *Stark v. Starr, supra,* at 485, 24 L.Ed. 276. Therefore, counts IV through VIII of plaintiff's complaint are hereby dismissed.

In dismissing those counts of plaintiff's instant complaint which seek to void Section 12.6 of the NHL By-Laws, I do not express or intimate any opinion as to the validity or invalidity of such by-law or as to my agreement or disagreement with the holding in the California action. Plaintiff's proper course of action, if he wishes to challenge the decision in the California action as to the propriety of Section 12.6, is to prosecute an appeal to the appellate court (as is being done) and not to bring an independent action against the same defendants in another court of concurrent jurisdiction.

Finally, defendants contend that count IX which sounds in defamation does not state a claim upon which relief can be granted for failure to allege the defamatory words with specificity. Plaintiff has admitted that count IX as presently drafted fails to state a claim, but seeks leave to amend. Fed.R.Civ.P. rule 15(a) provides that leave to amend "shall be freely given

---

9. "[A plaintiff] does not get another day [in court] after the first lawsuit is concluded by giving a different reason than he gave in the first for recovery of damages for the same invasion of his rights. The problem of his right against the defendant based upon the alleged wrongful acts is fully before the court whether all the reasons for recovery were stated to the court or not." *Williamson v. Columbia Gas & Electric Corp., supra,* at 470.

when justice so requires." Unless the proposed amendment to the complaint will result in undue prejudice to the other party, has been unduly delayed, has not been offered in good faith or the moving party has had repeated opportunities to cure defects by amendments previously allowed, leave to amend should be liberally granted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Because none of these factors is present here, plaintiff should be given an opportunity to amend count IX prior to its dismissal. Therefore, count IX shall be dismissed unless plaintiff files an amended count IX setting forth the alleged defamation *in haec verba* within 30 days of the filing of this order.

Because of these determinations, it is unnecessary to reach the other issues raised by the parties in their memoranda and at oral argument.

So ordered.