**CONNECTICUT GENERAL LIFE INSURANCE CO. OF NEW YORK, et al.**

v.

**Allen B. COLE, et al.**

**No. 91 CIV 7408.**

United States District Court,
S.D. New York.

May 7, 1993.

Patricia A. Smith, Dwyer & Brennan, New York City, for plaintiffs.

Juliana Maugeri, Van de Water & Van de Water, Poughkeepsie, NY, for defendants.

## AMENDED MEMORANDUM ENDORSEMENT

CONBOY, District Judge.

Plaintiffs INA Life Insurance Company of New York ("LICONY") and Connecticut General Life Insurance Company ("Connecticut General") bring this action seeking a declaration of the rights and obligations of the parties concerning the proceeds of an accident insurance policy and two life insurance policies. Defendant Allen B. Cole, who was convicted in New York State Supreme Court of murdering the insured, is one of the designated beneficiaries under each policy. Defendant Marguerite O'Reilly is an equal beneficiary under the accident policy, and defendants Judith Eidel, Patricia Spots, and Shauna Ferguson are contingent beneficiaries under the life insurance policies.

Pending before the Court are the following motions: 1. Plaintiff LICONY moves for an order granting it summary judgment and declaring that its payment of the entire proceeds of the accident policy to defendant O'Reilly was proper; 2. Defendant O'Reilly moves for an order granting her summary judgment and declaring that payment of the entire accident policy proceeds to her was proper; and 3. Plaintiff Connecticut General moves for an order authorizing it to pay into Court, or to a person(s) designated by this Court, the proceeds of the basic and supplemental life insurance policies.[1] Connecticut General requests that upon such payment it be discharged from any liability under the basic and supplemental life insurance policies, and that each defendant be permanently enjoined from instituting any action against Connecticut General for the recovery of the basic and supplemental life insurance proceeds or any part of them. Connecticut Gen-

eral also requests that this Court grant such other and further relief as it deems proper.

For the reasons that follow, we grant LICONY's motion for summary judgment and defendant O'Reilly's motion for summary judgment. Moreover, we direct Connecticut General to pay directly to defendants Eidel, Spots, and Ferguson, the proceeds of the basic and supplemental life insurance policies, according to the terms of those policies, with interest from January 28, 1990. Upon such payment, Connecticut General shall be discharged of any liability under the basic and supplemental life insurance policies, and defendants will be permanently enjoined from instituting any action against Connecticut General for the recovery of the basic and supplemental life insurance proceeds or any part of them.

## BACKGROUND

The following facts are not in dispute. Sharyn O'Reilly Cole (the "insured") was an employee of Hilton International. LICONY issued to Hilton International an accident policy which protected the insured against accidental death and has a benefit of $150,000. The insured designated her husband, defendant Allen B. Cole ("Cole"), and her mother, defendant Marguerite O'Reilly ("O'Reilly"), as equal beneficiaries under the accident policy.

Connecticut General issued to Hilton International a basic and supplemental group life insurance policy, and the insured was covered under this policy. The basic policy has a $15,000 benefit and the supplemental policy has a $175,000 benefit. The insured designated Cole as the primary beneficiary under the life insurance policies, and designated her sisters, defendants Judith Eidel ("Eidel"), Patricia Spots ("Spots"), and Shauna Ferguson ("Ferguson") as contingent beneficiaries who were each to receive one third of the proceeds in the event of Cole's death. The above-mentioned insurance policies were part of an employee welfare benefit plan covered by the Employee Retirement Income

---

1. Connecticut General is not requesting that this court direct it to pay the insurance proceeds directly to those defendants who are found to be entitled to the proceeds. Rather, Connecticut General is making an interpleader claim pursuant to Rule 22 of the Federal Rules of Civil Procedure. (*See* plaintiff Connecticut General's Memorandum of Law, at 3–5.)

Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1988 & Supp. II 1990) ("ERISA").[2]

The insured died as a result of a battering to the head. On February 6, 1991, Cole was convicted in New York State Supreme Court of the depraved mind murder[3] of the insured, his wife. On March 27, 1991, Cole was sentenced to a prison term of from 22 years to life. Cole filed a notice of appeal on April 19, 1991, but he has not yet perfected his appeal.[4]

LICONY decided that Cole was disqualified as a beneficiary under the accident policy due to his murder conviction, and therefore, LICONY paid the entire proceeds of the accident policy to defendant O'Reilly. Cole contends that payment of the accident policy proceeds to defendant O'Reilly was not proper, and requests that the accident policy proceeds be held in escrow pending the outcome of his appeal of his conviction. (*See* defendant Cole's Reply Memorandum of Law of 8/23/92, at 7–8.)

Connecticut General has not yet paid out the proceeds of the basic and supplemental life insurance policies. Defendants Cole, Eidel, Spots, and Ferguson assert claims to the basic and supplemental life insurance proceeds. Cole consents to Connecticut General's request that it be permitted to pay into court the proceeds of the basic and supplemental life insurance policies. Although they have not made a motion, defendants Eidel,

Spots, and Ferguson request in their Answer, Counterclaim and Crossclaim that this Court 1. issue a declaratory judgment that Cole is disqualified from collecting any of the basic and supplemental life insurance proceeds; 2. direct Connecticut General to pay the basic and supplemental life insurance proceeds directly to them, with interest from December 28, 1989;[5] and 3. grant such other and further relief that the Court deems just and proper, together with the costs and disbursements of this action.

## DISCUSSION

A. Subject Matter Jurisdiction for this Action Exists Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988)

Plaintiffs LICONY and Connecticut General assert that jurisdiction for this declaratory judgment action exists under 29 U.S.C. § 1132(e)(1) (1988 & Supp. II 1990). (Compl. ¶ 2.) Section 1132(e)(1) states that except for actions brought under subsection (a)(1)(B) of that section, the United States District Courts shall have exclusive jurisdiction over civil actions brought under subchapter I[6] by the Secretary of Labor, or by a participant, beneficiary, or fiduciary of an ERISA plan. 29 U.S.C. § 1132(e)(1) (1988 & Supp. II 1990). Neither LICONY nor Connecticut General is a "participant" or "beneficiary" of an ERISA plan as these terms are defined by the ERISA statute.[7] Moreover,

---

2. ERISA regulates employee benefit plans, 29 U.S.C. § 1001 (1988 & Supp. II 1990), including employee welfare benefits plans. 29 U.S.C. § 1002(3) (1988 & Supp. II 1990). ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of sickness, accident, disability, death, or unemployment...." 29 U.S.C. § 1002(1) (1988 & Supp. II 1990).

3. A person is guilty of depraved mind murder, a form of second degree murder, if "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y.Penal Law § 125.25(2) (McKinney 1987 & Supp.1992).

4. This Court has contacted the Appellate Division and has been informed that as of March 29, 1993, defendant Cole has not perfected his appeal.

5. On December 28, 1989, defendants Eidel, Spots, and Ferguson filled out an application for the basic and supplemental life insurance proceeds.

6. Subchapter I of ERISA, 29 U.S.C. §§ 1001–1145 (1988 & Supp. II 1990), deals with the protection of employee benefits.

7. A "participant" is defined as "an employee or former employee of an employer ..., who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ..., or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7) (1988 & Supp. II 1990).

plaintiff insurance companies have not provided us with sufficient information to determine whether they qualify as fiduciaries under ERISA. *See* 29 U.S.C. § 1002(21)(A) (1988 & Supp. II 1990). However, as we discuss below, even if we assume that plaintiffs are fiduciaries, they have not established jurisdiction under ERISA.

A fiduciary of an ERISA plan may bring an action "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain ... equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan ...;" 29 U.S.C. § 1132(a)(3)(A)–(a)(3)(B) (1988 & Supp. II 1990). Subsections 1132(a)(3)(A) and 1132(a)(3)(B)(i) are inapplicable here because plaintiff insurance companies do not claim that defendants violated any provision of ERISA or the terms of the plan. Therefore, plaintiffs are apparently asserting jurisdiction under § 1132(a)(3)(B)(ii). *See* 29 U.S.C. § 1132(a)(3)(B)(ii) (1988 & Supp. II 1990). The issue thus becomes whether plaintiffs' suit is an action either to obtain "equitable relief" or to "enforce" the terms of the plan.

■ A declaratory judgment is not always a form of "equitable" relief. *Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1251 (9th Cir.1987). If the nature of the underlying controversy is "legal" rather than "equitable", a declaratory judgment will be considered a form of legal relief. *Id.* at 1251–52. The underlying controversies in this case are defendants' contractual claims to benefits under the accident insurance policy and the life insurance policies. Since a contractual claim to benefits is a *legal* claim, the declaratory judgment plaintiffs seek is a form of *legal* relief, and therefore, plaintiffs' action is not to obtain equitable relief. *See Id.* (holding that an *insurance company's* declaratory judgment action presented a legal claim where the underlying controversy was a beneficiary's contractual claim for double indemnity benefits under a life insurance policy covered by ERISA).

■ Moreover, we do not believe that through this action plaintiffs are seeking to "enforce" the terms of their ERISA plan. A declaratory judgment "enforces" the terms of an ERISA plan if 1. "it seeks to establish the primacy of an ERISA obligation over some independent, potentially conflicting federal or state law duty", or 2. it seeks to establish that the party against whom the action is brought has an obligation under ERISA that it is allegedly disregarding. *Transamerica*, 811 F.2d at 1252. An action brought solely to clarify one's obligations as an insurer is *not* a suit to "enforce" the terms of an ERISA plan. *See Id.*; *Reynolds v. Stahr*, 758 F.Supp. 1276, 1280 (W.D.Wis. 1991). Thus, the instant case, which plaintiffs brought solely to clarify their obligations as insurers, is not seeking to enforce the terms of an ERISA plan.

As is apparent, plaintiffs' assertion that we have jurisdiction over this case under ERISA is erroneous. However, we conclude that we have jurisdiction under the Declaratory Judgment Act.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that federal jurisdiction in a declaratory judgment action exists if the defendant against whom the declaratory judgment is sought could have brought a coercive action in federal court to enforce his rights. *West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 194–95 (2d Cir.1987). Under 29 U.S.C. § 1132(a)(1)(B) (1988 & Supp. II 1990), a beneficiary of an ERISA plan may bring an action in federal court "to recover benefits due to him under the terms of [the] plan ...;" All of the defendants in the present action are beneficiaries of an ERISA plan as that term is defined by the ERISA statute. *See* footnote 7. Because the defendants could have brought a coercive action in federal court to recover the benefits they believe are due them, we have jurisdiction over this case under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See Transamerica*, 811 F.2d at 1253 (stating that federal jurisdiction existed under the Declaratory Judgment Act

---

A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become

entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (1988 & Supp. II 1990).

because the declaratory judgment defendant could have brought an action in federal court under 29 U.S.C. § 1132(a)(1)(B) for the benefits she believed were due to her).

B. Defendant Cole Has Forfeited His Right to Receive the Insurance Proceeds Because He Was Convicted of the Depraved Mind Murder of the Insured

1. *New York* [8] *Law*

■ LICONY contends that defendant Cole has forfeited his right to receive the accident policy proceeds because he was convicted of murdering the insured. (*See* Compl. ¶ 26.) Citing *In re Loud's Estate*, 70 Misc.2d 1026, 334 N.Y.S.2d 969, 971 (Sur.Ct., Kings County 1972), Cole contends that a beneficiary who kills the insured forfeits the insurance proceeds only if the killing was felonious and was committed with the *mens rea* of *intent*. (*See* def. Cole's Memorandum of Law of 8/3/92, at 10.) Cole contends that his conviction for depraved mind murder established only that he killed feloniously with the *mens rea* of *recklessness*,[9] *see People v. Register*, 69 N.Y.2d 270, 469 N.Y.S.2d 599, 603, 457 N.E.2d 704, 708–09 (1983) (holding that the *mens rea* of depraved mind murder is recklessness), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2159, 80 L.Ed.2d 544 (1984), and

that therefore, he should not be deprived of his insurance proceeds unless a subsequent civil proceeding establishes that he killed the insured with the *mens rea* of intent. (Def. Cole's Mem. of Law of 8/3/92, at 10–11.)

It is well established public policy in New York [10] that "[n]o one shall be permitted ... to take advantage of his own wrong, or ... to acquire property by his own crime." *Riggs v. Palmer*, 115 N.Y. 506, 511, 22 N.E. 188 (1889). New York law is unclear however as to exactly what crimes result in an individual forfeiting monies or property he would otherwise be entitled to receive. *In re Will of Wells*, 76 Misc.2d 458, 350 N.Y.S.2d 114, 117 (Sur.Ct., Nassau County 1973).[11] While the cases are in agreement that a homicide committed with the *mens rea* of intent results in forfeiture, there is a split among the courts as to whether the commission of a homicide with the *mens rea* of recklessness also results in a forfeiture. Compare *In re Loud's Estate*, 334 N.Y.S.2d at 971 (Where a beneficiary has been convicted of a homicide which does not require that he killed the insured with the *mens rea* of intent, a forfeiture will not occur unless a subsequent civil proceeding establishes that the beneficiary feloniously killed the insured with the *mens rea* of intent.) and *Jane Doe v. Amer. Gen. Life Ins. Co. of N.Y.*, 139 Misc.2d 80, 526 N.Y.S.2d

---

8. Where ERISA does not preempt state law, the accident insurance policy issued by LICONY is to be governed by New York law. *See Woodhouse v. New Hampshire Fire Ins. Co.*, 147 N.Y.S.2d 879, 880 (N.Y.Sup.Ct.1955) (Absent a showing that the parties had a different forum in mind, an insurance policy is to be construed and enforced using the law of the state in which the policy was issued and to be performed.) *aff'd*, 2 A.D.2d 842, 156 N.Y.S.2d 149 (1st Dep't 1956). Both LICONY and the insured's employer are located in New York, and the policy and check were sent to LICONY at a New York address.

9. Penal Law § 15.05(3) defines recklessness as follows: "A person acts recklessly with respect to a result or ... a circumstance ... when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y.Penal Law § 15.05(3) (McKinney 1987).

10. In *Mendez–Bellido v. Bd of Trustees of Division 1181, A.T.U.*, 709 F.Supp. 329, 331

(E.D.N.Y.1989), the court held that New York law "prohibiting a killer from profiting from [his] crime" is not preempted by ERISA. The court also stated that even if ERISA does preempt New York law in this area, federal law is basically in accord with New York law. *See id.* at 332–333; *see also Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir.1959) (holding that although the National Life Insurance Act of 1940 makes no provision for the situation where a beneficiary kills the insured, public policy dictates that unless the killer was insane when he committed the act, or unless the killing was accidental or in self-defense, a beneficiary who kills the insured cannot recover the insurance proceeds).

11. *In re Will of Wells*, 350 N.Y.S.2d at 114–19, discusses whether an individual who kills the testator can recover as a legatee under the testator's will. However, in this opinion, we discuss will cases and insurance cases interchangeably because the law regarding forfeiture is the same whether the right to inherit or the right to collect insurance proceeds is at issue. *In re Loud's Estate*, 334 N.Y.S.2d at 970.

904, 905 (Sup.Ct., Bronx County 1988) (Where a beneficiary has not been convicted of a crime or even arrested, forfeiture will not occur unless a civil action establishes that the beneficiary killed the insured with the *mens rea* of intent.) and *Estate of Brown*, 132 Misc.2d 171, 503 N.Y.S.2d 532, 532 (Sur.Ct., Monroe County 1986) (Where a beneficiary has been convicted of a homicide requiring the *mens rea* of intent, he forfeits the insurance proceeds without the need for a subsequent civil hearing to establish that he killed the insured with the *mens rea* of intent.) with *In re Will of Wells*, 350 N.Y.S.2d at 118–19 (The commission of a felonious homicide with the *mens rea* of intent is not a mandatory element for a forfeiture to occur. A conviction for reckless manslaughter is sufficient to result in forfeiture.) and *Mendez–Bellido*, 709 F.Supp. at 330 (stating the same in dictum). We have found no case which indicates whether a conviction for depraved mind murder, a crime whose *mens rea* is recklessness, also results in forfeiture.

We believe that the New York Court of Appeals would hold that a person convicted of depraved mind murder should not be able to recover as a beneficiary under the insurance policy of the murder victim. The Court of Appeals has indicated that the crime of depraved mind murder is "equal in blameworthiness to intentional murder." [12] *Register*, 469 N.Y.S.2d at 601, 457 N.E.2d at 706; *accord People v. Fenner*, 61 N.Y.2d 971, 475 N.Y.S.2d 276, 277, 463 N.E.2d 617, 618 (1984). Indeed, to convict a defendant of depraved mind murder, a jury must determine that his act was so grave that it "placed the crime on the same level as the taking of life by premeditated design." *Register*, 469 N.Y.S.2d at 601, 457 N.E.2d at 706. Moreover, both intentional murder and depraved mind murder are class A–1 felonies, *see* N.Y. Penal Law § 125.25, with the same possible

prison terms. *See* N.Y. Penal Law §§ 70.-00(2)(a), 70.00(3)(a)(i) (McKinney 1987). Therefore, since New York law and public policy preclude a beneficiary convicted of intentional murder from recovering the insurance proceeds, *see Estate of Brown*, 503 N.Y.S.2d at 532, we will not allow a beneficiary who committed a crime equal in blameworthiness to intentional murder to reap a benefit from his crime. Specifically, we hold that Cole's conviction of depraved mind murder precludes him from recovering his share of the insurance proceeds under the accident policy.

### 2. Missouri Law

The basic and supplemental life insurance policies issued by Connecticut General state that "[t]hese policies are issued in Missouri and shall be governed by its laws." Accordingly, we look to Missouri law to determine whether Cole's conviction in New York of depraved mind murder precludes him from recovering the basic and supplemental life insurance proceeds.

■■■ Under Missouri law, a beneficiary of a life insurance policy who kills the insured with the *mens rea* of intent forfeits the right to receive the insurance proceeds. *Wells v. Harris*, 414 S.W.2d 343, 345–46 (Mo. Ct.App.1967). However, the Missouri courts have not yet addressed whether a beneficiary who kills the insured with the *mens rea* of recklessness also forfeits the insurance proceeds. *See, e.g., Wells*, 414 S.W.2d at 346 (dictum) (stating that although the commission of an intentional homicide results in forfeiture, whether the commission of a nonintentional homicide, such as manslaughter by culpable negligence,[13] also results in forfeiture is "an entirely different problem").

---

**12.** A person is guilty of intentional murder, a form of second degree murder, when "[w]ith the intent to cause the death of another person, he causes the death of such person or a third person ...;" N.Y.Penal Law § 125.25(1) (McKinney 1987 & Supp.1992).

**13.** Under prior Missouri law, a defendant could be convicted of manslaughter by culpable negligence only if his conduct was "of such a RECKLESS or wanton character as to indicate on his

part utter indifference to the life of another...." *State v. Melton*, 326 Mo. 962, 33 S.W.2d 894, 895 (1930) (emphasis added). Presently, Missouri law does not use the term culpable negligence to refer to the *mens rea* of recklessness and clearly states that a person who "[r]ecklessly causes the death of another person" is guilty of involuntary manslaughter. *See* Mo.Ann.Stat. § 565.024.1(1) (West Supp.1992).

As we have determined above, both federal law and New York law would prohibit a beneficiary from recovering the insurance proceeds if he killed the insured with the *mens rea* of recklessness under circumstances where the risk of death was grave. Moreover, several New York courts have stated that a beneficiary who kills the insured with the *mens rea* of recklessness forfeits the insurance proceeds even if the risk of death was *not* very substantial. *See, e.g., Mendez–Bellido*, 709 F.Supp. at 330 (dictum). Therefore, we believe that the Missouri Supreme Court would hold, at least in those cases where the risk of death is grave enough to support a conviction in New York courts for depraved mind murder, that a beneficiary who kills the insured with the *mens rea* of recklessness cannot recover the insurance proceeds. Accordingly, we hold that Cole's conviction of depraved mind murder precludes him from recovering the proceeds of the basic and supplemental life insurance policies.

C. Defendant Cole is Collaterally Estopped from Relitigating in this Declaratory Judgment Action the Issue of Whether He is Guilty of Depraved Mind Murder

■ Defendant O'Reilly argues that defendant Cole should be collaterally estopped from relitigating in this declaratory judgment action the issue of whether or not he is guilty of the depraved mind murder of the insured. (*See* Mem. of Law in Supp. of Def. O'Reilly's Mot. for Partial Summ. J., at 3–4.) Cole contends that collateral estoppel should not be invoked in this instance because he has not yet had a full and fair opportunity to litigate his guilt. (Def. Cole's Mem. of Law of 8/3/92, at 9.)

"The doctrine of collateral estoppel forecloses a party from relitigating an issue that has already been determined against him in an earlier judgment on another cause of action." *Cerbone v. County of Westchester*, 508 F.Supp. 780, 785 (S.D.N.Y.1981). Collateral estoppel is based on the concept that "once fairly tried, an issue resolved should not be [retried]." *Read v. Sacco*, 49 A.D.2d 471, 375 N.Y.S.2d 371, 375 (1975). The policies underlying the use of this doctrine are the need

for judicial economy and for the finality of judgments. *See Id.*

Moreover, it is now settled that absent federal law modifying the operation of the full faith and credit statute, 28 U.S.C. § 1738 (1988), a federal court must give a state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 80–81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Thus, in examining whether defendant's criminal conviction in New York State Supreme Court precludes him from relitigating his guilt in this declaratory judgment action, this court must determine what preclusive effect a New York court would give that judgment.

■ Under New York law, a criminal conviction is conclusive proof of the same facts involved in a subsequent civil proceeding if the requirements for the application of collateral estoppel are met. *S.T. Grand, Inc. v. City of New York*, 32 N.Y.2d 300, 344 N.Y.S.2d 938, 941–42, 298 N.E.2d 105, 107–08 (1973); *Read v. Sacco*, 375 N.Y.S.2d at 374. There are now only two requirements which must be met before collateral estoppel may be invoked: 1. "the identical issue necessarily must have been decided in the prior action and be decisive in the present action ...", and 2. "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985). The parties seeking to benefit from the application of collateral estoppel (in this case, plaintiffs LICONY and Connecticut General and all of the defendants except for Cole) have the burden of showing that the issue in the present suit is identical to the one decided in the prior action. *See Deutsch v. Integrated Barter Int'l Inc.*, 700 F.Supp. 194, 197 (S.D.N.Y. 1988) (citing *Kaufman*, 492 N.Y.S.2d at 588, 482 N.E.2d at 67). The party opposing the application of collateral estoppel (in this case, defendant Cole) has the burden of showing he lacked a full and fair opportunity to litigate the issue. *Id.*

As to the identity of issues requirement, the issue necessarily decided in the prior action was defendant's guilt of the depraved mind murder of the insured. No one contests the fact that the same issue is dispositive of the present action. Therefore, we conclude that the plaintiffs and defendants O'Reilly, Eidel, Spots, and Ferguson have met their burden of establishing the identity of issues.

However, as to the second requirement, Cole contends that he has not yet had a full and fair opportunity to litigate whether or not he is guilty of depraved mind murder because his appeal from his conviction is pending. *See Duverney v. State of New York*, 96 Misc.2d 898, 410 N.Y.S.2d 237, 245–46 (Ct.Cl.1978) (stating in dictum that the existence of an appeal is a factor to be considered in determining whether a party had a full and fair opportunity to litigate an issue), *aff'd*, 76 A.D.2d 962, 429 N.Y.S.2d 70 (3d Dep't 1980). In New York, unlike other jurisdictions, the rule is that "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." *Matter of Amica Mut. Ins. Co.*, 85 A.D.2d 727, 445 N.Y.S.2d 820, 822 (2d Dep't 1981). Although *Duverney*, 410 N.Y.S.2d at 245–46, indicates that the existence of an appeal should be considered in determining whether a full and fair opportunity to litigate the issue existed, it emphasizes that this is but one of the factors to be considered. The other factors to be considered include: "the size of the claim, the forum of prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." *Schwartz v. Public Adm'r of County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725, 729 (1969). Further, in *Matter of Amica*, 445 N.Y.S.2d at 822, the court stated in dictum that it would not apply collateral estoppel to a judgment if that judgment was substantially likely to be reversed on appeal because of a change in the applicable law.

In *In re Professional Fin. Management, Ltd.*, 692 F.Supp. 1057, 1063 (D.Minn.1988), a Minnesota court applying New York law weighed the pendency of an appeal along with other factors delineated in *Schwartz* to determine whether or not a defendant could be collaterally estopped from relitigating in a subsequent civil proceeding an issue necessarily decided in his criminal conviction. The court held that, despite his pending appeal, the defendant was precluded from relitigating the issue necessarily decided by his criminal conviction because he did not present any "compelling reason why it would be unfair to rely on the lengthy trial, and a conviction based on the strictest standard of proof." *Id.* Similarly, in the case before us, Cole has not articulated any compelling reason why it would be unfair to rely on his criminal conviction; Cole has not claimed that his counsel was incompetent or inexperienced, nor has he claimed that the magnitude of the charge or the forum of litigation discouraged him from vigorously contesting his guilt. *Cf. Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 52, 423 N.E.2d 807, 810 (1981) (which held that collateral estoppel would not be applied to the defendant's conviction of a petty offense in City Court because the relative insignificance of the charge and the brisk and informal manner by which such charges are tried in City Court would discourage a defendant from vigorously contesting his guilt). Moreover, Cole has not claimed that he was convicted by a compromise verdict. *See generally Grand*, 344 N.Y.S.2d at 941–42, 298 N.E.2d at 304–05 ("It is well recognized that there are rigorous safeguards imposed to insure against unjust conviction in a criminal action.... [Thus] no injustice is committed if defendants are estopped from relitigating issues determined in conformity with those safeguards.")

Further, Cole asserts no change in the applicable law since his conviction. Cole does argue that he will win on appeal because of his "two Constitutional points". (*See* def. Cole's Reply Mem. of Law of 8/23/92, at 7.) However, since he has not discussed what these points are nor indicated how they would probably result in his conviction being reversed on appeal, his conclusory allegation cannot prevent the application of

collateral estoppel in this case. *See Cerbone,* 508 F.Supp. at 785 (stating that it would weaken the doctrine of collateral estoppel if a defendant's "unsupported and conclusory allegations could call into question [his] past opportunity to fully and fairly litigate [his] case"). Similarly, while Cole claims to have new evidence, (def. Cole's Reply Mem. of Law of 8/23/92, at 7), he has not stated what this evidence is nor indicated how it would lead to reversal on appeal. Thus, after evaluating all of the factors delineated by the New York courts we conclude that Cole has not met his burden of establishing that he lacked a full and fair opportunity to litigate his guilt.[14]

As the two requirements under New York law for the application of collateral estoppel have been met, we conclude that Cole is collaterally estopped from relitigating in this declaratory judgment action the issue of whether or not he is guilty of the depraved mind murder of the insured.

D. **Defendants Eidel, Spots, and Ferguson are Entitled to Receive Prejudgment Interest on the Basic and Supplemental Life Insurance Proceeds**

■ As Cole's conviction of depraved mind murder precludes him from recovering the basic and supplemental life insurance proceeds, we direct Connecticut General to pay these proceeds directly to the contingent beneficiaries: defendants Eidel, Spots, and Ferguson. Defendants Eidel, Spots, and Ferguson contend that they are entitled to receive interest on these proceeds from December 28, 1989, the day they filled out a claim for the basic and supplemental life insurance proceeds. (*See* Defs.' Answer, Countercl., and Cross-cl. ¶ 25.)

"The question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute." *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d

1208, 1218 (8th Cir.1981), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). The cause of action in the present case arises from a federal statute because subject matter jurisdiction over this case is premised on the defendants' right to sue under ERISA, a federal statute, for the benefits they believe are due to them. Therefore, we will look to federal law to determine whether the above-mentioned defendants are entitled to prejudgment interest on the basic and supplemental life insurance proceeds and to determine the appropriate interest rate if prejudgment interest is granted.

While ERISA is silent on the issue of prejudgment interest, *see id.* at 1219, the Second Circuit has allowed prejudgment interest to be awarded in cases arising under ERISA. *Mendez v. Teachers Ins. and Annuity Ass'n and College Retirement Equities Fund,* 982 F.2d 783, 790 (2d Cir.1992). However, prejudgment interest should not be awarded to a party merely because that party is found to be entitled to the proceeds. *Id.* Instead, the award of prejudgment interest in a case arising under ERISA "is a discretionary matter for the court and should be awarded only in cases where such an award is 'fair, equitable, and necessary to compensate the wronged party fully.'" *Id.* (quoting *Wickham Contracting v. Local Union No. 3, IBEW,* 955 F.2d 831, 835 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302).

Because the present case involves an insurance company's request for interpleader, we also look to interpleader cases to determine whether an award of prejudgment interest would be equitable here. Prejudgment interest will be awarded in an interpleader action if the party seeking to deposit the funds into court has "improperly and excessively delay[ed] the filing of the interpleader action." *Avant Petroleum, Inc. v. Banque Paribas,* 652 F.Supp. 542, 544 (S.D.N.Y.1987), *aff'd,* 853 F.2d 140 (2d Cir.

---

14. Cole nevertheless argues that *Estate of Brown* 503 N.Y.S.2d at 533, supports his position because in *Brown,* the court declined to apply collateral estoppel to defendant's criminal conviction and instructed the insurance company to place the proceeds in escrow pending the outcome of the appeal. However, *Brown* merely restates the proposition that an appeal is one factor to be considered in determining whether a full and fair opportunity to litigate an issue existed. *Id.* The court in *Brown* declined to apply collateral estoppel only because defendant's appeal had already been perfected and was soon to be argued. *Id.* That is not the case here.

1988); see *John Hancock Mut. Life Ins. Co. v. Doran*, 138 F.Supp. 47, 49–50 (S.D.N.Y. 1956). In *John Hancock*, 138 F.Supp. at 48–50, an insurance company delayed filing a bill of interpleader until ten months after the company was notified of an adverse claim to the proceeds of a life insurance policy. The claimant who was eventually found to be entitled to the proceeds requested prejudgment interest on the proceeds from the date the adverse claim was filed. *Id.* at 48–49. The court held that the insurance company should have commenced the interpleader action within one month of receiving the adverse claim. *Id.* at 49. Accordingly, the court awarded to the prevailing claimant prejudgment interest dating from one month after the insurance company was notified of the adverse claim to the life insurance proceeds. *Id.*

Similarly, in the present case, Connecticut General did not commence this interpleader action until twenty-one [15] months after defendants Eidel, Spots, and Ferguson notified the company of their adverse claim to the life insurance proceeds. Therefore, we hold that Connecticut General improperly delayed the commencement of this interpleader action and we award defendants Eidel, Spots, and Ferguson prejudgment interest dating from January 28, 1990, which is one month after these defendants notified Connecticut General of their adverse claim to the life insurance proceeds.

As we have determined that defendants Eidel, Spots, and Ferguson are entitled to receive prejudgment interest, we must now determine the interest rate to be applied. District courts generally have discretion in deciding what interest rate to apply in ERISA cases where prejudgment interest is awarded. *Cefali v. Buffalo Brass Co., Inc.*, 748 F.Supp. 1011, 1025 (W.D.N.Y.1990). Moreover, "[t]he Second Circuit has not expressly endorsed any particular prejudgment interest rate." *Id.* In awarding prejudgment interest in an ERISA case, the Court in *Cefali* applied the rate for postjudgment interest provided by 28 U.S.C. § 1961(a) (1988), which is tied to the rate of interest on Treasury bills. *Id.* Accordingly, we find the

rate provided by 28 U.S.C. § 1961(a) to be appropriate in the present case.

### E. Defendants Eidel, Spots, and Ferguson are Not Entitled to Receive the Costs and Disbursements of this Action

Defendants Eidel, Spots, and Ferguson request that this Court award them the costs and disbursements of this action. (*See* Defs.' Answer, Countercl., and Cross-cl. ¶ 25.) Title 29 U.S.C. § 1132(g)(1) (1988 & Supp. II 1990) provides that in an ERISA action brought under subchapter I (other than an action described in § 1132(g)(2)) "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In deciding whether to award attorney's fees or costs the court must consider the following factors: " '(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.' " *Mendez*, 982 F.2d at 788 (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 971 (2d Cir.1987)).

Applying this five-factor test to the present case, we conclude that defendants' request for the costs and disbursements of this action should be denied. As to the first factor, Connecticut General did act in bad faith by failing to timely commence this interpleader action. Moreover, the second factor is met because Connecticut General can afford to pay the costs and disbursements of this action. Further, we recognize that an award of costs against an insurance company that excessively delayed the commencement of an interpleader action may deter other companies from delaying in the future. However, we do not feel that these factors are dispositive in the present case because our award of prejudgment interest fully compensates the defendants for Connecticut General's delay and will discourage other

---

**15.** Connecticut General commenced this inter-pleader action on September 30, 1991.

insurance companies from excessively delaying the commencement of interpleader actions.

Moreover, factor five has not been met here because this action does not confer a common benefit on a group of pension plan participants. Nor has factor four been met here because the relative merits of the parties' positions was unclear under Missouri law. *Cf. Mendez*, 982 F.2d at 787–89 (where the court awarded costs and disbursements because the insurance company delayed filing the interpleader action even though it was clear which of the two claimants was entitled to the proceeds). Because two factors of the five-factor test for awarding costs and disbursements have not been met in the present action, and because the award of prejudgment interest in this case fully compensates the defendants for the insurance company's delay and will sufficiently discourage other insurance companies from delaying the filing of interpleader actions in the future, defendants' request for the costs and disbursements of this action is denied.

## CONCLUSION

LICONY's motion for summary judgment is granted and we declare that LICONY's payment of the entire proceeds of the accident insurance policy to defendant O'Reilly was proper. Defendant O'Reilly's motion for summary judgment on the same ground is also granted. Moreover, we direct Connecticut General to pay the proceeds of the basic and supplemental life insurance policies directly to defendants Eidel, Spots, and Ferguson. Further, we direct Connecticut General to pay the above-mentioned defendants insurance policy to defendant O'Reilly was proper. Defendant O'Reilly's motion for summary judgment on the same ground is also granted. Moreover, we direct Connecticut General to pay the proceeds of the basic and supplemental life insurance policies directly to defendants Eidel, Spots, and Ferguson. Further, we direct Connecticut General to pay the above-mentioned defendants prejudgment interest on the basic and supplemental life insurance proceeds, dating from January 28, 1990, at the interest rate provided by 28 U.S.C. § 1961(a). Upon such pay-

ment, Connecticut General shall be discharged of any liability under the basic and supplemental life insurance policies and defendants shall be permanently enjoined from instituting any action against Connecticut General for the recovery of the basic and supplemental life insurance proceeds. Eidel, Spots, and Fergusons' request for the costs and disbursements of this action is denied.

SO ORDERED.