**AEROGROUP INTERNATIONAL, INC., Plaintiff,**

v.

**The SHOE SHOW, INC., The Shoe Show of Rocky Mount, Inc., Defendants.**

**No. 95–CV–6583L.**

United States District Court, W.D. New York.

June 13, 1997.

Kenneth A. Payment, Rochester, NY, Eric J. Lobenfeld, Drew Wintringham, Brian A. Miller, Chadbourne & Parke, New York City, for Aerogroup Intern., Inc.

Richard D. Rochford, Heidi L. Holman, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, Charles E. Buffon, Tracy A. Thomas, Covington & Burling, Washington, DC, for Shoe Show, Inc., The Shoe Show of Rocky Mount, Inc. and Shoe Show of Wilmington, Inc.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

This is a trade dress, trade mark and patent infringement case. Plaintiff Aerogroup makes women's shoes including women's casual sandals, using the brand name AEROSOLES.® Defendants The Shoe Show Inc. and The Shoe Show of Rocky Mount, Inc. (Shoe Show) are discount retailers of women's shoes.

This suit was filed November 20, 1995. Aerogroup's claims arise out of the sale, by Shoe Show, of women's "Air Twist" brand sandals, which are "knock offs" (*i.e.*, imitations) of a particular model of AEROSOLES® sandals. Aerogroup alleges that by selling Air Twist sandals, Shoe Show infringes upon Aerogroup's federal trade dress, trademark and patent rights, as well as its rights under New York statutory and common law. Specifically, Aerogroup seeks to enjoin sales of Air Twist brand shoes because the name 'Air Twist' is printed across a white shoe box in lettering similar in style and identical in color to Aerogroup's trademark AEROSOLES® brand name, and the box also contains a depiction of a twisted shoe that is similar to Aerogroup's "twisted shoe design" for which a trademark application is pending.

In January 1996, Aerogroup moved for a preliminary injunction and for expedited discovery. Following limited discovery, the preliminary injunction motion was resolved by Stipulation and Order dated March 20, 1996, pursuant to which Shoe Show agreed to cease utilizing the allegedly offending packaging on future orders of Air Twist shoes and insert disclaimers ("not associated with AEROSOLES®") in all existing Air Twist shoe boxes. This stipulation was entered into by consent of the parties; there was no hearing and no factual findings were made by the Court. Moreover, it is apparent that the parties intended the stipulation to be of limited duration, *i.e.*, "[u]ntil the infringement issue in this case is decided by the District Court ..." March 20, 1996 Stipulation and Order at ¶¶ 1, 3.

Shoe Show now moves for partial summary judgment dismissing the trademark and trade dress infringement claims asserted against it and vacating the March 20, 1996 Stipulation and Order. The basis for Shoe Show's motion is the collateral estoppel effect of a decision and order rendered in a separate but related action pending in the Southern District of New York, *Aerogroup International, Inc. v. Marlboro Footworks, Ltd.,* 96–cv–2717 (Judge Denise Cote).

Aerogroup opposes and cross-moves for partial summary judgment. Aerogroup argues that this Court should defer consideration of Shoe Show's motion because the *Marlboro* decision presently is being appealed. In the alternative, it argues that this Court should deny Shoe Show's motion and grant partial summary judgment to Aerogroup on certain claims which were determined in its favor in the *Marlboro* decision.

### THE MARLBORO DECISION

While this action was pending before me, on April 17, 1996 Aerogroup sued Marlboro and other defendants (but not Shoe Show) in the United States District Court for the Southern District of New York. Marlboro is a manufacturer and supplier of "knock-off" shoes.[1] In the *Marlboro* action, Aerogroup's claims included trademark infringement under 15 U.S.C. § 1114(1), trade dress infringement under 15 U.S.C. § 1125(a), dilution under 15 U.S.C. § 1125(c), and unfair competition under New York common law.

As in this case, Aerogroup sought to enjoin the Marlboro defendants from utilizing trade dress and trademarks similar to those of Aerogroup. In addition to the same Air Twist brand packaging at issue in this case, Aerogroup also asserted claims relative to the marketing of other brands of shoes, including ones called 'Airflex' and 'Airsupply.' Thus, with respect to all these brands, Aerogroup asserted that Marlboro infringed (1) the AEROSOLES® trademark (which consists of the word Aerosole in stylized capital letters written on an angle with the right edge of the work going up and a twisting line underneath that curves back and forth three times)—the 'swoosh;' (2) the waffle sole trademark, No. 1,953,875, which consists of a plurality of diamond or rhombic recessed patterns on the shoe sole; (3) the twisted shoe trademark for which a trademark application is pending; and (4) Aerosole's trade dress, which includes any combination of these elements when used to sell women's comfort sandals. *See Aerogroup International, Inc. v. Marlboro Footworks, Ltd.*, 96–

cv–2717, Judgement and Order dated November 15, 1996. Aerogroup provided to Judge Cote a list of specific shoes, shoe boxes, and advertisements which it claimed were infringing. Included in that group was "Exhibit 117," the same Air Twist shoe box at issue in the case before this Court.

In the *Marlboro* action, Judge Cote conducted a hearing on Aerogroup's application for a permanent injunction and then read her extensive findings from the bench on October 21, 1996. The findings and conclusions were summarized in a Judgment and Order dated November 15, 1996. Judge Cote found that the AEROSOLES® trademark is strong and that Aerogroup "has established trade dress rights which include the use of the Aerosoles trademark with a swoosh underneath, located on the shoe box, ... and the twisted shoe, either alone or in combination, in connection with women's comfort fashion footwear bearing a waffle sole." Judgment and Order at p. 4. Based upon these findings Judge Cote determined that Marlboro had infringed Aerogroup's trademark and trade dress rights with respect to certain items bearing brand names Airsupply and Airflex. However, she found no infringement with respect to the Air Twist brand shoe box.

With respect to Air Twist in particular, Judge Cote stated as follows:

I find that the twisted shoe figure used by the Marlboro defendants on the Air Twist box is not sufficiently similar to the Aerogroup twisted shoe trademark to warrant enjoining its use. First, the Air Twist shoe box contains a drawing of two hands twisting a shoe held horizontally. Second, the Aerogroup twisted shoe is a simple line drawing of a twisted shoe on a vertical axis.

Thus, in looking at Exhibit 117, I find there is not sufficient similarity to believe that any consumer would confuse the logo, name, and design of the Air Twist box with the trademarked twisted shoe design belonging to Aerogroup. Similarly, I find that the overall trade dress displayed on the Air twist box does not violate Aero-

---

1. Shoe Show is one of Marlboro's customers. Thus, Shoe Show orders knock-offs, including Air Twist sandals, from a selection offered by

Marlboro, and Marlboro manufactures and delivers the shoes.

group's trade dress rights, nor does the use of the Air Twist name alone or in conjunction with the twisted shoe design violate Aerosoles' trademark rights. Therefore I reject each of Aerogroup's claims with respect to Exhibit 117. October 21, 1996 Decision at p. 655.

Moreover, Judge Cote found no infringement of Aerogroup's waffle sole trademark because she determined that the sole was not subject to protection. Despite its trademark, she found that Marlboro had met its burden to overcome the presumption of distinctiveness. Judge Cote found for various reasons that the waffle trademark lacks both inherent and acquired distinctiveness.

In sum, Judge Cote found that the Air Twist box did not infringe upon Aerogroup's AEROSOLES® trademark, its twisted shoe design, or its trade dress generally. Judge Cote also found that none of the Marlboro shoe soles (including Air Twist) infringed upon Aerogroup's waffle sole design trademark. Finally, for the same reasons, Judge Cote found no violation of New York's common law of unfair competition. October 21, 1996 Decision at p. 665 ("Because [New York's unfair competition law] analysis was largely determinative of my analysis under the Lanham Act, I find no reason to reach a different conclusion under New York common law").[2]

Aerogroup sought an injunction prohibiting the sale of, *inter alia*, Air Twist shoes pending appeal of Judge Cote's decision to the United States Court of Appeals for the Federal Circuit. This request was denied by the District Court and also by the Federal Circuit in a short opinion dated December 20, 1996 finding that Aerogroup failed to demonstrate a likelihood of success on the merits of its appeal.

## THE MOTIONS

Shoe Show now seeks partial summary judgment based upon the collateral estoppel effect of the findings made by Judge Cote in the *Marlboro* decision. Shoe Show alleges

that some of the very same issues before me have been decided by Judge Cote. Thus, Shoe Show seeks partial summary judgment dismissing Aerogroup's trademark and trade dress infringement claims.

. Aerogroup asks that I defer deciding Shoe Show's motion until its appeal finally is decided. Specifically, Aerogroup asserts that I should give "very weighty consideration" to the fact that the decision is being appealed.

■ Collateral estoppel is applicable where (1) the issues presented are in substance the same as those resolved in the prior litigation; (2) no controlling facts or legal principles have changed significantly since the prior proceeding; and (3) no special circumstances warrant an exception to the normal rules of preclusion. *Niagara Frontier Tariff Bureau, Inc. v. United States*, 826 F.2d 1186 (2d Cir.1987) (citing *Montana v. United States*, 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979)). Because jurisdiction in this case and the *Marlboro* case is grounded upon the federal Trademark and Patent Laws, federal rules regarding collateral estoppel apply. *See Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F.Supp. 69, 80 (S.D.N.Y.1982) (citing *Blonder–Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971)); *see also Johnson v. Eli Lilly and Co.*, 689 F.Supp. 170, 172 (W.D.N.Y.1988) (finding that federal law determines the res judicata and collateral estoppel effects of a prior federal judgment, whether the prior case was grounded in federal question or diversity jurisdiction); *In re Celotex Corp.*, 175 B.R. 98, 112 (Bankr.M.D.Fla.1994) ("Federal law was applied in [the prior actions], therefore the federal standard of collateral estoppel must be applied").

■ The federal standards for application of collateral estoppel are as follows: (1) the party against whom collateral estoppel is asserted must have been a party, or in privity with a party, to the prior action; (2) the

---

2. The *Marlboro* case is not over. Specifically left undetermined was whether the waffle trademark (No. 1,953,875) should be canceled and whether summary judgment in favor Marlboro is proper on Aerogroup's patent infringement claim. While counsel verbally has informed me that the patent claims now have been dismissed, this fact is not part of the record before me.

issues to be collaterally estopped must have been finally determined on the merits; (3) the estoppel issues must have been essential, necessary, and material to the prior action; (4) the estopped issues must have been actually litigated, and the party to be estopped must have had the opportunity to fully and fairly litigate the issues; and (5) the issues decided must be identical to the issues sought to be estopped. *Kamakazi*, 534 F.Supp. at 80 (citing *Montana v. United States*).[3]

Aerogroup does not assert that any of these standards is not met. Rather, it asserts that because the decision is being appealed, I should stay any determination that Judge Cote's decision precludes litigation of the same issues before me.

■■■■ The law is clear that, ordinarily, the pendency of an appeal should not impact the collateral estoppel effect of an otherwise final and valid judgment. *See United States v. Internation. Brotherhood of Teamsters*, 905 F.2d 610, 620–21 (2d Cir.1990) (pendency of criminal appeals did not deprive judgments of preclusive effect in union disciplinary proceeding); *In re Laventhol & Horwath*, 139 B.R. 109, 114 (S.D.N.Y.1992) (" 'pendency of an appeal does not suspend the collateral

estoppel effect of an otherwise final judgment' in federal practice unless *de novo* review is permitted on appeal") (citing *Cerbone v. County of Westchester*, 508 F.Supp. 780, 785 (S.D.N.Y.1981)); *see also Neeld v. Nat'l Hockey League*, 439 F.Supp. 446 (W.D.N.Y. 1977) ("The pendency of an appeal does not suspend the *res judicata* effect of an otherwise final judgment unless such appeal removes the entire action to the appellate court so as to constitute a proceeding *de novo* ..."); Wright, Miller & Cooper, 18 *Federal Practice and Procedure* § 4433 (1981).[4]

Aerogroup relies heavily on *Yamaha Int'l v. Central Venture, Inc.*, 1991 WL 4548 (S.D.N.Y.1991), a case involving Lanham Act and Tariff Act claims. There, the movant (defendant) sought summary judgment based upon the preclusive effect of a California United States District Court decision against the same plaintiff, on some of the same claims. The California case was on appeal to the Ninth Circuit. In addition to the California case, another relevant case was on appeal from the United States District Court for the District of Columbia to the D.C. Circuit.

The defendants in *Yamaha* asserted that its marketing activities would be chilled if the

---

3. In addition to its federal claims, Aerogroup has asserted "pendant and ancillary" state law claims in this action. Supplemental claims also were asserted in the *Marlboro* action. Because jurisdiction of these claims is supplemental, I don't think their presence requires any separate analysis applying New York law. However, even if it did, the result would be the same because the standards are essentially comparable. Under New York law, when determining whether to apply collateral estoppel, courts must pursue two general lines of inquiry. First, the court must determine whether the issue sought to be precluded is identical to the issue decided in the prior action and, second, the court must determine whether the party to be bound had a full and fair opportunity to contest the determination now said to control. *Conte v. Justice*, 996 F.2d 1398, 1401 (2d Cir.1993).

Factors to be considered in whether a party had a full and fair opportunity to litigate include the size of the claim, the forum of prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation. *Connecticut Gen. Life Ins. Co. v. Cole*, 821 F.Supp.

193, 201 (S.D.N.Y.1993) (citing *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969)). Thus, at best, the pendency of an appeal is but one factor of many to consider. *See Connecticut Gen.*, 821 F.Supp. at 201.

4. In this case, the United States Court of Appeals for the Federal Circuit will not conduct a *de novo* review of Judge Cote's entire decision. Judge Cote's factual findings with respect to whether Aerogroup's trademarks and trade dress are inherently distinctive (or have acquired secondary meaning) will be reviewed under a substantial evidence test. *See Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1263 (Fed.Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995). Her findings with respect to each factor determining likelihood of confusion will be reviewed under a clearly erroneous test. *Id.* at 1264. Although her weighing of these factors and ultimate conclusion regarding likelihood of confusion is subject to a *de novo* review—*see id.* at 1264—this is because it is considered a legal issue. *See Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995); *see also Western Pub. Co., Inc. v. Rose Art Industries, Inc.*, 910 F.2d 57 (2d Cir.1990). Thus, Judge Cote's factual findings are not subject to *de novo* review.

court stayed its determination. Nonetheless, the court stayed its determination with specific instructions to be notified when the Ninth Circuit appeal was decided.

■ While it is true that *Yamaha* is similar to this case in many respects, it is distinguishable in a very important one: In *Yamaha*, the defendant's business activities were not restricted by any pending injunction or stipulation. Here, the defendants currently are bound by the March 20, 1996 Stipulation and Order, preventing them from engaging in the very activities Judge Cote has found to be lawful. Shoe Show asserts that it prefers to use the old packaging, that its customers had come to recognize the older packaging, and that its marketing for the fall and holiday season will be hurt if it cannot return to its old packaging. Affidavit of Carolyn Tucker dated March 12, 1997.

I will not defer consideration of Shoe Show's motion pending resolution of the appeal in *Marlboro*. The *Marlboro* case included the very same claims of infringement that are pending before me; the *Marlboro* decision was reached after a full evidentiary hearing at which Aerogroup asserted its arguments (Aerogroup makes no claim that it was not ably represented by counsel); in a decision denying an injunction pending appeal, the Federal Circuit has suggested that Judge Cote correctly applied the relevant legal standards and it has expressly stated that Aerogroup has not demonstrated a likelihood of success on appeal. In light of the above, I see no compelling reason to defer consideration of Shoe Show's motion.

Aerogroup further opposes Shoe Show's motion on the grounds that collateral estoppel should not apply because Shoe Show was not a party to the *Marlboro* litigation. Aerogroup asserts that an important factor in determining whether infringement has occurred is whether the copier acted in bad faith. *See Kurt S. Adler, Inc. v. World Bazaars, Inc.*, 897 F.Supp. 92, 98, (S.D.N.Y. 1995). Because Shoe Show was not a party to the *Marlboro* litigation Judge Cote did not consider Shoe Show's intent. Aerogroup argues that because Shoe Show designed and ordered the offending Air Twist shoes from Marlboro, its intent must be analyzed.

■ To prevail under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), a plaintiff must prove (1) that its trade dress is distinctive of this source and (2) that a likelihood of confusion exists between its product and the defendant's product. *See Knitwaves, Inc. v. Lollytogs, Ltd.*, 71 F.3d 996, 1006 (2d Cir.1995); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S.Ct. 2753, 2759–60, 120 L.Ed.2d 615 (1992). Similarly, to establish trademark infringement under 15 U.S.C. § 1114 a plaintiff must show that it has a valid mark entitled to protection and that a defendant's use is likely to cause confusion. *See Cadbury Beverages v. Cott Corp.*, 73 F.3d 474 (2d Cir.1996). The legal standard for trademark and trade dress infringement is comparable. *Two Pesos, Inc.*, 505 U.S. at 767–68, 773, 112 S.Ct. at 2756–57.

■ With respect to evaluating the second prong of this legal standard—likelihood of confusion—the Second Circuit has mandated use of the multi-factor balancing test set forth in *Polaroid Corp. v. Polarad Electronics*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). These factors are: strength of the mark (or dress); proximity of the products; likelihood that the first user will want to "bridge the market gap"; actual confusion; the defendant's good faith; quality; consumer sophistication; and similarity of marks. Thus, the defendants' good faith is but one of eight factors to be considered in evaluating the second prong of the legal standard.

■ As noted by Judge Cote, evaluating the *Polaroid* factors "is not a mechanical process 'where the party with the greatest number of factors weighing in its favor wins.' Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." October 21, 1996 Decision at p. 632 (citing *Paddington Corp. v. Attiki Importers & Distrib. Inc.*, 996 F.2d 577, 583 (2d Cir.1993)). Thus, "the proper approach is to weigh each factor in the context of the others to determine if, on balance, a likelihood of confusion exists." *Id.* (citing *W. W W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993)).

Judge Cote found that no likelihood of confusion exists. Specifically, she found that "there is not sufficient similarity to believe that any consumer would confuse the logo, name, and design of the Air Twist box with the trademarked twisted shoe design belonging to Aerogroup" and that "the shoe sole used by the Marlboro defendants is not confusingly similar to that used by Aerogroup." October 21, 1996 Decision at p. 655. Because Judge Cote found that no consumer would be confused by the Air Twist shoe box or shoe sole, whether Shoe Show's intent was different than Marlboro's is irrelevant. *See id.* at p. 651 (" 'if a comparison of the [marks] reveals no fair jury issue concerning likelihood of confusion, then intent to copy, even if found from the proffered evidence, would not establish a Lanham Act violation' ")(citing *Warner Bros. v. American Broadcasting Co.,* 720 F.2d 231, 246–47 (2d Cir.1983)).

Moreover, it doesn't appear that Marlboro's culpability was markedly different than that of any customer, including Shoe Show. Marlboro was closely involved in choosing the knock-off styles, including packaging, for its customers. October 21, 1996 Decision at p. 623 ("Marlboro and its agents consulted closely with Marlboro customers on the details of the trade dress.") Indeed, Marlboro provided the menu of selected footwear styles from which the customers picked. *Id.* Thus, it does not appear that Marlboro was acting separately and/or more innocently that any of its customers (including Shoe Show.) It cannot be said that Marlboro's bad faith was markedly different from its customers.

Indeed, Judge Cote determined that "knocking-off" designer styles is commonplace in the industry. In fact, she determined that Aerogroup itself sells some styles as knock-offs, under different brand names. Thus, Judge Cote determined that the issue is not whether Marlboro intended to copy (clearly it did). Instead, the issue was whether it intended to infringe illegally on Aerogroup's rights.

Aerogroup has argued vigorously that the Marlboro defendants have acted with bad faith and have intentionally copied the Aerosoles trademarks and trade dress and that this entitles them to a presumption of confusion. There is considerable evidence that the Marlboro defendants are intentionally copying the Aerosoles shoes. But it is equally clear that under established shoe industry custom, including Aerosoles' own practice of "Aerosole-izing" other brands, shoe manufacturers commonly copy, or knock off, competitors' shoes. Most knock-offs are copies of the shoe upper, that portion of the shoe that does not include the sole. Thus, the issue is not whether there is evidence that Marlboro intended to copy Aerosoles shoes, but whether Marlboro intended to copy legally protected intellectual property rights owned by Aerogroup. Judge Cote Decision at pp. 651–52.

Judge Cote determined that Marlboro did not intend to infringe upon Aerogroup's shoe sole. With only one possible exception (not involving Air Twist brand shoes) Judge Cote further determined that Marlboro did not intend to infringe upon Aerogroup's trade dress. *See* October 21, 1996 Decision at p. 652.

Absent some confusion, Shoe Show's "intent" is immaterial. Accordingly, I find that there would be no difference in the outcome of the entire infringement analysis if Shoe Show's (as opposed to Marlboro's) intent were analyzed.

For these reasons Shoe Show's motion is granted. The legal standards for applying collateral estoppel have been met: Aerogroup was a party to the *Marlboro* litigation; the trademark and trade dress infringement issues were decided on their merits; the trademark and trade dress infringement issues were material; the trademark and trade dress infringement issues were actually litigated and Aerogroup had the opportunity to fully and fairly litigate the issues; and the same trademark and trade dress infringement issues are before me in this case. *See Kamakazi,* 534 F.Supp. at 80. No controlling facts or legal principles have changed significantly since *Marlboro* and the pendency of the appeal does not warrant an exception to the rule. Because Judge Cote found that the Air Twist shoe box did not

 

infringe upon Aerogroup's AEROSOLES® trademark, its twisted shoe design, or its trade dress generally, and because the Court found that the Air Twist shoe sole did not infringe upon Aerogroup's waffle sole design trademark, Aerogroup is collaterally estopped from litigating these same issues before me.

Finally, Aerogroup seeks partial summary judgment on certain claims which were decided in its favor by Judge Cote. Aerogroup asserts that because Judge Cote determined that Aerogroup's rights were infringed as the result of certain Airflex trade dress, Aerogroup should obtain the benefit of that determination in the action pending before me.

However, there are no claims before me involving the Airflex brand. There is not a single reference in the Amended Complaint to the Airflex brand. As I read the Amended Complaint it is clear that Aerogroup was focusing only on the Air Twist brand. Thus, I find that there are no claims before me concerning the Air Flex brand and I decline to enter judgment relating to those shoes based on the findings of Judge Cote.

### CONCLUSION

For all the above reasons, I hereby GRANT Shoe Show's motion for partial summary judgment and to vacate the March 20, 1996 stipulation (# 44); and DENY Aerogroup's cross-motion to defer consideration of Shoe Show's motion and in the alternative for partial summary judgment (# 47) in its entirety. Aerogroup's First Cause of Action (false designation of origin, infringement of trade dress); Second Cause of Action (common law claim); Fifth Cause of Action (infringement of the waffle sole trademark); and Sixth Cause of Action (infringement of the twisted shoe design) are dismissed without prejudice to being reasserted if the *Marlboro* decision is reversed or modified on appeal. The March 20, 1996 Stipulation and Order (# 32) is vacated.

Finally, because Shoe Show has asserted counterclaims in this action alleging the invalidity of Aerogroup's "shoe sole" patent (No. 307,816) and seeking cancellation of the waffle sole trademark (No. 1,953,875), and because both of these issues remain before

Judge Cote as well, this action is further stayed pending the final resolution of those issues before Judge Cote.

IT IS SO ORDERED.